**NO. 22-2163**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

---

**VOICE TECH CORP.,**
***Appellant*,**

**v.**

**UNIFIED PATENTS, LLC,**
***Appellee.***

---

**Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in No. IPR2020-01018**

---

**BRIEF OF APPELLEE UNIFIED PATENTS, LLC**

---

**HAYNES AND BOONE, LLP**

Debra J. McComas
David L. McCombs
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Phone: (214) 651-5375

Raghav Bajaj
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Phone: (512) 867-8520

Angela M. Oliver
800 17th Street NW, Suite 500
Washington, D.C. 20006
Phone: (202) 654-4552

***ADDITIONAL COUNSEL LISTED ON INSIDE COVER***

**UNIFIED PATENTS, LLC**

Roshan Mansinghani
Jordan Rossen
4445 Willard Ave., Ste. 600
Chevy Chase, MD 20815
Phone: (214) 945-0200

***Attorneys for Appellee, Unified Patents, LLC***

## U.S. Patent No. 10,491,679, Claims 1 and 5 (Appx74–75)

1. A method of accessing and controlling a computer from a mobile device, comprising:

receiving audio data from the mobile device, at the computer, at an audio command interface;

the audio command interface decodes the audio data into a command;

the audio command interface selects, from at least one operating system and at least one application, one operating system or one application, wherein the audio command interface decides is the appropriate operating system or application to execute at least one process in response to the command;

executing with the selected operating system or application the at least one process in response to the command;

generating output data in response to the selected operating system or application executing the at least one process; and

transmitting the output data to the mobile advice [sic].

5. A system for accessing and controlling a computer from a mobile device, comprising:

a computer;

a communications medium that couples the mobile device to the computer; and

an audio command interface, at the computer, the audio command interface: receives audio data from the mobile device;

decodes the audio data into a command;

selects, from at least one operating system and at least one application, one operating system or one application, wherein the audio command interface decides is the appropriate operating system or application to execute at least one process in response to the command;

executes with the selected operating system or application the at least one process at the computer in response to the command; and

generates output data in response to the selected operating system or application executing the at least one process;

wherein a mobile device interface at the computer transmits the output data to the mobile device.

# CERTIFICATE OF INTEREST

**Case Number** 22-2163

**Short Case Caption** Voice Tech Corp. v. Unified Patents, LLC

**Filing Party/Entity** Appellee / Unified Patents, LLC

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: March 10, 2023

Signature: */s/ Debra J. McComas*

Name: Debra J. McComas

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. |
| ___ None/Not Applicable | X None/Not Applicable | _ None/Not Applicable |
| Unified Patents, LLC | | Unified Patents Acquisition, LLC |
| | | Unified Patents Holdings, LLC |

| | | |
|---|---|---|
| | | Unified Patents Management, LLC |
| | | UP HOLDCO INC. |

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

__ None/Not Applicable ___ Additional pages attached

| | | |
|---|---|---|
| Michelle Aspen (Unified Patents, LLC) | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

_ None/Not Applicable ___ Additional pages attached

| | | |
|---|---|---|
| Voice Tech Corporation v. Mycroft AI Inc., 4-20-cv-00111 (W.D. Mo.) | Voice Tech Corporation v. Mycroft AI Inc., 4-20-cv-00662 (W.D. Mo.) | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

X None/Not Applicable ___ Additional pages attached

| | | |
|---|---|---|
| | | |

# TABLE OF CONTENTS

U.S. Patent No. 10,491,679, Claims 1 and 5 (Appx74–75) .................................... i

CERTIFICATE OF INTEREST .................................................................. ii

TABLE OF AUTHORITIES ......................................................................iv

STATEMENT OF RELATED CASES ..........................................................1

JURISDICTIONAL STATEMENT .............................................................. 2

STATEMENT OF THE ISSUES ..................................................................3

INTRODUCTION ........................................................................................ 4

STATEMENT OF THE CASE .....................................................................5

A. Technical Background ........................................................5

1. The ’679 Patent ........................................................5

2. The Prior Art ............................................................ 9

B. Procedural History ..........................................................14

1. Unified’s IPR ..........................................................14

2. The Board’s Final Written Decision ...........................15

3. Patent Owner’s Request for Rehearing ........................15

SUMMARY OF THE ARGUMENT ..............................................................16

ARGUMENT ..............................................................................................19

I. Standard of Review .......................................................................19

II. The Court need not consider Voice Tech’s claim construction arguments, which, in any event, are unsupported by the ’679 patent. ................................................. 20

A. “audio command interface” ..................................................21

B. "mobile device interface" .......... 24

III. Substantial evidence supports the Board's unpatentability findings. .......... 26

A. Substantial evidence supports the Board's findings that both Wong and the combination of Wong and Beauregard disclose the "receiving" limitations. .......... 26

1. Wong alone discloses the "receiving" limitations. .......... 26

2. The combination of Wong and Beauregard renders obvious the "receiving" limitations. .......... 29

B. The Board's findings as to the "decodes" limitations are supported by substantial evidence. .......... 31

1. Wong alone discloses the "decodes" limitations. .......... 32

2. The combination of Wong and Beauregard also renders obvious the "decodes" limitations. .......... 34

C. Substantial evidence supports the Board's findings regarding the "deciding/selecting" limitations. .......... 38

IV. Unified's evidence demonstrated obviousness as of the time of the invention. .......... 45

V. Substantial evidence supports the Board's finding that the prior art discloses the "mobile device interface" of claims 5–8. .......... 50

A. The Board's finding that the prior art discloses the mobile device interface is supported by substantial evidence. .......... 51

B. Whether the Petition adequately articulates the grounds for finding claims 5 and 7 unpatentable is

part of the Institution Decision and is not reviewable. .......... 55

C. In any event, the Board did not abuse its discretion in finding the grounds for limitations 5.8 and 7.8 adequately addressed. .......... 58

D. The Board did not rely on new arguments raised for the first time on reply; it adopted the arguments raised in the Petition. .......... 63

VI. To the extent the Court does not affirm obviousness over Wong and Beauregard, the Court should remand for consideration of Unified's separate obviousness ground. .......... 69

CONCLUSION .......... 70

CERTIFICATE OF COMPLIANCE .......... 72

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AC Techs. S.A. v. Amazon.com, Inc.*,
912 F.3d 1358 (Fed. Cir. 2019) ........ 69

*Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*,
949 F.3d 1366 (Fed. Cir. 2020) ........ 65

*AMP Plus, Inc. v. DMF, Inc.*,
2022 WL 16844516 (Fed. Cir. Nov. 10, 2022) ........ 62

*Arendi S.A.R.L. v. Apple Inc.*,
832 F.3d 1355 (Fed. Cir. 2016) ........ 19

*Ariosa Diagnostics v. Verinata Health, Inc.*,
805 F.3d 1359 (Fed. Cir. 2015) ........ 69

*Belden Inc. v. Berk-Tek LLC*,
805 F.3d 1064 (Fed. Cir. 2015) ........ 20, 67

*Cameron Int'l Corp. v. Nitro Fluids, L.L.C.*,
No. 2021-1183, 2022 WL 636099 (Fed. Cir. Mar. 4, 2022) ........ 58

*Choirock Contents Factory Co., Ltd. v. Saucier*,
801 F. App'x 754 (Fed. Cir. 2020) ........ 64, 65

*Cuozzo Speed Technologies, LLC v. Lee*,
579 U.S. 261 (2016) ........ 3, 50, 55, 57

*Elbit Systems of America, LLC v. Thales Visionix, Inc.*,
881 F.3d 1354 (Fed. Cir. 2018) ........ 63

*Hester Industries, Inc. v. Stein, Inc.*,
142 F.3d 1472 (Fed. Cir. 1998) ........ 23

*Immunex Corp. v. Sanofi-Aventis U.S. LLC*,
977 F.3d 1212 (Fed. Cir. 2020) ........ 19

*Infineum USA L.P. v. Chevron Oronite Co. LLC*,
No. 2020-1333, 2022 WL 3147683 (Fed. Cir. Aug. 8, 2022)..............................66

*Intellectual Ventures I LLC v. EMC Corp.*,
786 F. App'x 1021 (Fed. Cir. 2019).......................................................62, 65, 67

*Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016) ...........................................................19, 20, 58

*InTouch Techs., Inc. v. VGO Commc'ns, Inc.*,
751 F.3d 1327 (Fed. Cir. 2014)................................................................. 48, 49

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007) ......................................................................................... 43

*In re Magnum Oil Tools Int'l, Ltd.*,
829 F.3d 1364 (Fed. Cir. 2016)........................................................................ 57

*In re Merck & Co.*,
800 F.2d 1091 (Fed. Cir. 1986)........................................................... 28, 30, 35

*Merck & Co. v. Teva Pharms. USA, Inc.*,
395 F.3d 1364 (Fed. Cir. 2005)................................................................. 24, 28

*Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*,
868 F.3d 1013 (Fed. Cir. 2017) ........................................................... 20, 23, 25

*Polycom, Inc. v. Fullview, Inc.*,
767 F. App'x 970 (Fed. Cir. 2019)...........................................................*passim*

*Provisur Techs., Inc. v. Weber, Inc.*,
50 F.4th 117 (Fed. Cir. 2022) ........................................................................... 66

*SAS Inst., Inc. v. Iancu*,
138 S. Ct. 1348 (2018) ..................................................................................... 69

*SIPCO, LLC v. Emerson Elec. Co.*,
980 F.3d 865 (Fed. Cir. 2020).......................................................................... 19

*Uniloc 2017 LLC v. Facebook, Inc.*,
2021 WL 5370480 (Fed. Cir. Nov. 18, 2021).................................................... 63

**Statutes**

5 U.S.C. § 554 .......... 68

5 U.S.C. § 556 .......... 68

28 U.S.C. § 1295 .......... 2

35 U.S.C. § 6 .......... 2

35 U.S.C. § 141 .......... 2

35 U.S.C. § 312 .......... 58

35 U.S.C. § 314 .......... 2, 56

35 U.S.C. § 316 .......... 2

35 U.S.C. § 318 .......... 2

**Other Authorities**

37 C.F.R. § 42.23 .......... 20

37 C.F.R. § 42.71 .......... 15, 20, 23, 26

## STATEMENT OF RELATED CASES

In accordance with Federal Circuit Rule 47.5, no other appeal in or from the same civil action or proceeding was previously before this or any other appellate court.

To the best of knowledge of Unified Patents, LLC, the following cases may be affected by this appeal:

- *Voice Tech Corp. v. Mycroft AI Inc.*, Case No. 4:20-cv-00111 (W.D. Mo.)
- *Mycroft AI Inc. v. Voice Tech Corporation*, Case No. 4:20-cv-00662 (W.D. Mo.)

## JURISDICTIONAL STATEMENT

Appellee Unified Patents, LLC ("Unified") filed a Petition for *Inter Partes* Review of U.S. Patent No. 10,491,679 on June 5, 2020. Appx76. The Patent Trial and Appeal Board ("Board") had jurisdiction pursuant to 35 U.S.C. §§ 6(b), 314(a), 316(c), 318(a). The Board issued its Final Written Decision on December 13, 2021. Appx875. Appellant Voice Tech Corp. ("Voice Tech") filed a request for rehearing on January 12, 2022, which the Board denied on June 28, 2022. Appx52. Appellant filed a notice of appeal on August 19, 2022. Appx874–877.

This Court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. § 141(c).

## STATEMENT OF THE ISSUES

1. Whether Voice Tech has presented any concrete claim construction disputes for this Court to address.

2. Whether substantial evidence supports the Board's findings regarding the "receiving" limitations.

3. Whether substantial evidence supports the Board's findings regarding the "decodes" limitations.

4. Whether substantial evidence supports the Board's findings regarding the "deciding/selecting" limitations.

5. Whether the record demonstrates that the obviousness analysis was based on the knowledge of a person of ordinary skill in the art at the time of the invention.

6. Regarding claims 5–8, whether the Board abused its discretion in considering the Petition's arguments regarding the "mobile device interface" limitations—and whether that question is reviewable in light of *Cuozzo Speed Technologies, LLC v. Lee*, 579 U.S. 261 (2016).

## INTRODUCTION

In this *inter partes* review, the Board held claims 1–8 of U.S. Patent No. 10,491,679 unpatentable as obvious over the combination of two prior art references.

The majority of the issues raised by Voice Tech on appeal express disagreement with the Board's factual findings underlying the obviousness analysis, yet provide no basis to overturn those findings in light of the substantial evidence supporting the Board's Final Written Decision. The Board provided clear reasoning, supported by the prior art and expert testimony, throughout its Decision.

Although Voice Tech raises two claim construction disputes on appeal, the Court need not address those issues, as they would not affect the Board's analysis. Indeed, Voice Tech never explains how adopting its proposed constructions would change the outcome of the proceeding at all.

Finally, Voice Tech also raises other arguments based primarily on its view that Unified did not use precisely the right words in precisely the right locations in its Petition. But neither of these arguments raises a serious concern about the adequacy of the obviousness analysis. As to Voice Tech's "hindsight" argument, Unified's expert repeatedly made clear that he conducted his analysis from the perspective of one of skill in the art at the time of the alleged invention. And, as to Voice Tech's argument regarding the "mobile device interface" limitations, the

Petition expressly made clear that its mapping of an earlier limitation fully addressed the substantively similar limitations requiring a "mobile device interface." The Board did not abuse its discretion in finding those arguments adequately identified and explained in the Petition.

Accordingly, the Board's Decision in this proceeding should be affirmed in full.

## STATEMENT OF THE CASE

This appeal arises from a Final Written Decision ("FWD" or "Decision") issued by the Board in an *inter partes* review of U.S. Patent No. 10,491,679 ("the '679 patent") in case number IPR2020-01018. In its Decision, the Board found all of the challenged claims (claims 1–8) unpatentable as obvious. Appx1–50.

### A. Technical Background

#### 1. The '679 Patent

The '679 patent describes a system and method "for using voice commands from a mobile device to remotely access and control a computer." Appx70, 1:30–34. The mobile device may be "a cellular phone, smart phone, touch-screen device, personal digital assistant, tablet device, notebook device, laptop device, or other suitable mobile device." Appx70, 2:31–35.

The system includes a general purpose computer having "mobile device interface 106, audio command interface 108, operating system interface 110, and

native applications 112." Appx70, 2:38–43. The mobile device interface receives voice or data information from the mobile device. Appx71, 3:13–14, 3:51–54. The audio command interface "receive[s] data from mobile device interface 106 and detect[s] audio commands in the data." Appx71, 3:46–48. For example, the audio command interface may "provide a list of available commands to the person using mobile device 102" and execute detected commands. Appx71, 3:59–62.

Figure 4 of the '679 patent, below, illustrates a method "for using voice commands from a mobile device to remotely access and control a general purpose computer." Appx73, 7:50–53.




FIGURE 4

Appx69, Fig. 4. In Figure 4, a call is received from a mobile device and a session is established (steps 402/404). Appx73, 7:53–55, 7:61. In step 406, a determination is made whether a voice or data command has been received and, if so, "the voice or data command is decoded" in step 410. Appx73, 8:10–11, 8:23–25. At step 412, the method determines whether the command is an operating system command. Appx73, 8:32–36. If so, the command is executed at step 414; if not, the method determines whether a native application command has been received. If a native application command is received, it is executed in step 418. Appx73, 8:32–36, Appx74, 9:39–42, 9:46–49. The resulting output data is transmitted back to the mobile device at steps 422/424. Appx73–74, 8:61–63, 9:11–13.

Claims 1 and 5 of the '679 patent are representative of the disputes on appeal and are reproduced below, with limitation numbering added:

**Claim 1**

> **[1.0]** A method of accessing and controlling a computer from a mobile device, comprising:
>
> **[1.1]** receiving audio data from the mobile device, at the computer, at an audio command interface;
>
> **[1.2]** the audio command interface decodes the audio data into a command;
>
> **[1.3]** the audio command interface selects, from at least one operating system and at least one application, one operating system or one application, wherein the audio command interface decides is the appropriate operating system or application to execute at least one process in response to the command;

**[1.4]** executing with the selected operating system or application the at least one process in response to the command;
**[1.5]** generating output data in response to the selected operating system or application executing the at least one process; and
**[1.6]** transmitting the output data to the mobile advice [sic].

Appx74 (numbering added).

**<u>Claim 5</u>**

**[5.0]** A system for accessing and controlling a computer from a mobile device, comprising:
**[5.1]** a computer;
**[5.2]** a communications medium that couples the mobile device to the computer; and
**[5.3]** an audio command interface, at the computer, the audio command interface:
receives audio data from the mobile device;
**[5.4]** decodes the audio data into a command;
**[5.5]** selects, from at least one operating system and at least one application, one operating system or one application, wherein the audio command interface decides is the appropriate operating system or application to execute at least one process in response to the command;
**[5.6]** executes with the selected operating system or application the at least one process at the computer in response to the command; and
**[5.7]** generates output data in response to the selected operating system or application executing the at least one process;
**[5.8]** wherein a mobile device interface at the computer transmits the output data to the mobile device.

Appx74–75 (numbering added).

### 2. The Prior Art

Unified's Petition demonstrated that claims 1–8 ("the challenged claims") of the '679 patent would have been obvious over two separate grounds involving the following references:

- U.S. Patent Publication 2006/0235700 ("Wong"), Appx1273–1293;
- U.S. Patent 6,438,545 ("Beauregard"), Appx1294–1356;
- U.S. Patent 7,203,721 ("Ben-Efraim"); and
- U.S. Patent 6,233,559 ("Balakrishnan").

The Board held the challenged claims obvious over Wong and Beauregard (Ground 1). Appx48. Based on that holding, the Board did not address the Petition's separate ground (Ground 2) based on Ben-Efraim and Balakrishnan. *Id.*

The two references at issue on appeal are summarized below.

#### a. Wong

Wong is a patent application titled "Processing Files from a Mobile Device Using Voice Commands." Appx1273. Wong relates to "voice activated mobile computing devices" and, particularly, to "processing files from a mobile computing device using voice commands." Appx1280, ¶ 2. Wong discloses a method for "users to access and manipulate collections of electronic files stored on a computer from

their mobile device using voice commands." Appx1280, ¶ 12. This process is illustrated in Figure 3 and Figure 4a of Wong, shown below:




FIG. 3

Appx1276. In particular, at step 312 of Figure 3, a personal computer (PC) 210 receives "one or more commands" from a mobile device, e.g., "smart phone 202,"

including "voice commands." Appx1281, ¶¶ 37–38; *see also* Appx17. The method for processing voice commands is further illustrated in Figure 4a:




FIG. 4a

Appx1277. The PC "includes a speech recognition engine 213 that . . . identif[ies] voice commands and keywords" and "parses the command" (step 404). Appx1281, ¶¶ 32, 39; *see also* Appx1275, Fig. 2 (showing PC 210). The PC then executes the command. *See* Appx1281, ¶ 40. Finally, the PC "transmits data and/or files to the

device . . . as required by the received commands" (step 314 of Figure 3). Appx1282, ¶ 41.

While Wong describes these features in the context of a "photo server application 220," it explains that its teachings are not limited to photo-related files and functions alone. Appx1281, ¶ 39. For example, the mobile device may control the computer to perform a variety of commands, including "[p]erforming keyword searches," "[r]etrieving and viewing the keywords and metadata for photos," "[r]etrieving voice annotations," and "[e]mailing a photo to a contact." Appx1283–1284, ¶¶ 73–81. Wong also explains that its techniques "may be used with any other type of electronic file." Appx1281, ¶ 33.

**b. Beauregard**

Beauregard describes "[a] system and method that allows a user to use their everyday language or user defined words to operate a computer in a highly efficient way." Appx1294, Abstract; *see also* Appx1327, 4:41–43. Language "can be entered directly by the user via a keyboard or voice." Appx1329, 8:38–39. "[V]oice-to-text software is provided to translate the voice signals," and the resulting text is used to determine actionability. Appx1329, 8:39–46. If actionable, Beauregard's system "executes the designated action." Appx1329, 8:46–47.

Beauregard utilizes a microkernel engine, referred to as MIKE 330, which is shown in Figure 4:




FIG.4

Appx1299, Fig. 4. A user may enter input via "user input 310," which may be a microphone. Appx1333, 16:47–62.

Beauregard provides functionality similar to Wong, but further provides that natural-language voice commands may be used to operate software applications or an operating system. Specifically, Beauregard stores user-defined action words in a database (a wordbase), along with service scripts associated with those words. Appx1328, 5:12–26, 5:39–42, Appx1334, 17:33–36, Appx1299, Fig. 4. Voice commands are converted to text, which is forwarded to the command interpreter in

Beauregard's MIKE 330. Appx1333, 16:63, Appx1339–1340, 28:65–29:5. The command interpreter forwards the input to the fetcher, which searches the wordbase for matching action words and their associated scripts. Appx1330, 9:17–20, Appx1339, 28:56–64. If a match is found, the fetcher sends the script back to the command interpreter, which executes the script. Appx1328, 5:44–46, Appx1340, 29:9–14, Appx1333, 16:41–46. Beauregard explains that service scripts may perform a variety of services, including "caus[ing] an operation to be performed by a software application, a utility program, or by the operating system (e.g., opening a word processing document)." Appx1339, 28:11–14. Accordingly, the scripts allow the user "to launch applications, navigate within applications and control application functions by using their natural language." Appx1328, 5:49–51, Appx1330, 9:22–26, 10:41–44.

### B. Procedural History

#### 1. Unified's IPR

In June 2020, Unified filed a petition for *inter partes* review of the '679 patent, challenging eight claims under the following two obviousness grounds:

| Ground | Claims Challenged | Prior Art |
|---|---|---|
| Ground #1 | 1–8 | Wong and Beauregard |
| Ground #2 | 1–8 | Ben-Efraim and Balakrishnan |

Appx82; *see generally* Appx76–179. Unified supported its Petition and subsequent Reply with the expert testimony of Mr. Bruce McNair. Appx1213–1272 (McNair Decl.), Appx2736–2743 (McNair Reply Decl.).

The Board instituted this IPR in December 2020. Appx256. After institution, Voice Tech filed a Patent Owner Response, Unified filed a Reply, and Voice Tech filed a Sur-reply. *See* Appx932. Although Voice Tech filed an additional expert declaration with its Sur-reply, the Board struck (and expunged) that declaration as improper under the Board's rules. Appx747–753 (Order striking and expunging the Sur-reply Declaration of Dr. Caloyannides, Ex. 2040). On appeal, Voice Tech has not challenged the Order striking and expunging that evidence.

The Board held an oral hearing in September 2021. Appx758.

#### 2. The Board's Final Written Decision

In its Final Written Decision, the Board held the challenged claims obvious over Wong and Beauregard (Ground 1). Appx48. Based on that holding, the Board did not address the Petition's separate ground based on Ben-Efraim and Balakrishnan. *Id.*

#### 3. Patent Owner's Request for Rehearing

Voice Tech filed a request for rehearing of the Board's Final Written Decision, pursuant to 37 C.F.R. § 42.71(d). Appx835–853. As to the Board's

patentability analysis, Voice Tech raised three issues in its request: (1) an argument (not raised on appeal) regarding whether the audio command interface in the Wong-Beauregard combination performs the claimed "executing" and "generating" limitations in claims 5 and 7; (2) an argument that Unified created new arguments in its Reply regarding the "mobile device interface" limitation of claims 5 and 7; and (3) an argument that the Board misunderstood how Wong uses the term "parsed" in addressing the "decoding" limitation. *See* Appx836.

The Board rejected each of these arguments in its denial of Voice Tech's rehearing request, and Voice Tech subsequently appealed. Appx51–65 (R'hg Decision).

## SUMMARY OF THE ARGUMENT

This appeal presents a number of issues regarding whether the challenged claims would have been obvious over the combination of Wong and Beauregard. Almost all of those issues are reviewed under the deferential substantial evidence standard of review and should be affirmed in light of the evidence supporting the Board's findings. The other issues similarly fail to present any serious concerns regarding the Board's analysis.

*First*, although Voice Tech identifies two claim construction issues for this Court to address, the Court need not address those arguments at all. Voice Tech

never explains how its proposed constructions would impact or change the Board's obviousness analysis, meaning that there is no concrete dispute for this Court to address. Moreover, Voice Tech forfeited those issues by choosing not to raise them in its request for rehearing before the Board.

*Second*, the Board's findings regarding the "receiving" limitations are supported by substantial evidence. Indeed, the Board found these limitations disclosed by both Wong alone, as well as the combination of Wong and Beauregard. Each of those bases for the Board's Decision provides an independent basis to affirm as to these limitations.

*Third*, the Board's factual findings regarding the "decodes" limitations are also supported by substantial evidence. And, like the "receiving" limitations, the Board found these limitations taught in two distinct ways, again providing two options for affirming the Board's analysis.

*Fourth*, substantial evidence also supports the Board's findings that the combination of Wong and Beauregard discloses the "deciding/selecting" limitations. The Board relied on expert testimony to conclude that a person of ordinary skill in the art ("POSITA") would have been motivated to modify Wong's system to incorporate Beauregard's disclosures related to using voice commands to

select commands to control both operating systems and applications, and Voice Tech presents no basis for overturning those factual findings.

*Fifth*, Unified's analysis addressed obviousness at the time of the alleged invention, as demonstrated by repeated statements in the declaration of Unified's expert that he understood the obviousness analysis should be conducted through the eyes of a POSITA at that time. Voice Tech's contrary argument on appeal appears to be based more on a technicality than on any real challenge to the substance of that analysis. For instance, there is no contention by Voice Tech that Unified relied on evidence post-dating the alleged invention.

*Sixth*, with respect to claims 5–8, Voice Tech again bases its arguments on a technicality. Unified's Petition made clear that its analysis of limitation 1.6 (part of the challenged method claim) fully addressed the substantively similar limitations 5.8 and 7.8 (part of the challenged system claims), which refer to a "mobile device interface." The Board relied on the Petition and evidence submitted with the Petition—and nothing more—to reach its findings regarding the "mobile device interface." Accordingly, Voice Tech's arguments based on allegedly improper reply arguments are simply a red herring.[1]

[1] Although Voice Tech's brief addresses this issue first, Unified addresses it later in this brief, as it does not impact all of the claims on appeal.

Accordingly, for the reasons presented above, the Court should affirm the Board's Decision holding claims 1–8 unpatentable as obvious. Alternatively, to the extent the Court does not affirm the Board's obviousness analysis based on the combination of Wong and Beauregard, the Court should remand for the Board to address Unified's separate ground based on Ben-Efraim and Balakrishnan.

## ARGUMENT

### I. Standard of Review

The Board's legal conclusions are reviewed de novo, while its factual findings are reviewed for substantial evidence. *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1360 (Fed. Cir. 2016). "Obviousness 'is a question of law based on underlying findings of fact.'" *SIPCO, LLC v. Emerson Elec. Co.*, 980 F.3d 865, 870 (Fed. Cir. 2020) (quoting *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000)). The presence of a motivation to combine references is a factual issue reviewed for substantial evidence. *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1366–67 (Fed. Cir. 2016).

As to issues of claim construction, this Court reviews the Board's evaluation of the intrinsic record de novo, but reviews underlying factual determinations involving extrinsic evidence for substantial evidence. *Immunex Corp. v. Sanofi-Aventis U.S. LLC*, 977 F.3d 1212, 1218 (Fed. Cir. 2020).

The Board's decisions as to procedural matters, such as whether a reply exceeds its proper scope under 37 C.F.R. § 42.23(b), are reviewed for an abuse of discretion. *Intelligent Bio-Sys.*, 821 F.3d at 1367; *see also Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1078 (Fed. Cir. 2015).

## II. The Court need not consider Voice Tech's claim construction arguments, which, in any event, are unsupported by the '679 patent.

Voice Tech raises two claim construction disputes on appeal. *See* Voice Tech's Br. 30–38 ("VT's Br."). As explained below, however, the Court need not address either claim construction because (1) neither of Voice Tech's proposed constructions would change the outcome of the unpatentability analysis; and (2) Voice Tech forfeited both arguments by failing to raise them in its request for rehearing before the Board. *See Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*, 868 F.3d 1013, 1017 (Fed. Cir. 2017) ("[W]e need only construe terms 'that are in controversy, and only to the extent necessary to resolve the controversy . . . .'" (quoting *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999)); *Polycom, Inc. v. Fullview, Inc.*, 767 F. App'x 970, 979 (Fed. Cir. 2019) (non-precedential) (in an inter partes reexamination, holding an argument not raised on rehearing waived); 37 C.F.R. § 42.71(d).

### A. "audio command interface"

Voice Tech contends that the term "audio command interface" should be construed to mean "a functional component of a computer, which may be implemented in hardware, software, or a suitable combination of hardware and software, that enables a mobile device to access and control one or more operating systems and/or one or more applications at the computer without requiring voice command interoperability between the mobile device and each separate operating system or application." VT's Br. 31.

At the outset, the Court should not address this claim construction argument for at least two reasons:

First, adopting Voice Tech's construction would not alter the unpatentability analysis because the Board's findings would support unpatentability even under that construction. Voice Tech does not contend that the prior art used to disclose the "audio command interface" is not implemented in hardware, software, or a combination of the two. *See* VT's Br. 31, 33. In fact, Voice Tech acknowledges, without disputing, the Board's finding that "all computer components can be implemented in hardware, software, or suitable combinations of hardware and software." Appx14, VT's Br. 33. Nor does Voice Tech dispute that the prior art discloses an "interface" consistent with the definition cited by Voice Tech. *See*

Appx28 (finding Wong's speech engine is "an interface between smart phone 202 and application 220"), VT's Br. 32–33 (citing a dictionary, Appx2816, for a definition of "interface"). Nor does Voice Tech dispute that the prior art combination receives information from a mobile device. *See* Appx27–28, VT's Br. 34.

Regarding what appears to be the main focus of Voice Tech's proposed construction (that it "enables a mobile device to access and control one or more operating systems and/or one or more applications at the computer without requiring voice command interoperability between the mobile device and each separate operating system or application"), Unified demonstrated that the combination of Wong and Beauregard would render the challenged claims obvious even under that construction. *See* Appx593–594 (Reply addressing "audio command interface"). And, as Voice Tech acknowledges (*see* VT's Br. 42), the Board found that modifying Wong's speech engine to include Beauregard's logic regarding locating and executing scripts to control applications teaches accessing and controlling operating systems or applications *without requiring voice command interoperability*. *See* Appx28. Voice Tech has not challenged that finding on appeal. Thus, even if "audio command interface" were construed to require that feature (which would be incorrect), it would not change the unpatentability determination

in this case, so this Court need not address the construction. *See Nidec*, 868 F.3d at 1017.

Second, although Voice Tech filed a request for rehearing of the Board's Decision, it did not challenge the Board's treatment of this claim term in its request. *See* Appx835–853 (R'hg Request), Appx51–65 (Decision Denying R'hg). Accordingly, Voice Tech has forfeited any challenge to that issue on appeal. *See Polycom*, 767 F. App'x at 979; 37 C.F.R. § 42.71(d) (requiring a rehearing request to "specifically identify all matters the party believes the Board misapprehended or overlooked").

Regardless, if the Court does address Voice Tech's proposed claim construction, the Court should reject it. In particular, the prosecution history that Voice Tech cites refers to the overall functionality of the "audio command interface." *See* Appx1768–1769. In other words, even though the applicant attempted to distinguish the "present invention" over prior art systems requiring interoperability for each separate native application, the functionality that achieves that goal in the '679 patent is separately set forth in the limitations of the independent claims. *See* Appx1768–1769. Thus, that functionality does not need to be read into the single claim term "audio command interface." For at least this reason, *Hester Industries, Inc. v. Stein, Inc.*, does not dictate a different result. 142 F.3d 1472 (Fed.

Cir. 1998) (addressing whether reissue claims recaptured matter surrendered during prosecution). Moreover, reading that functionality into one term would be improper, as it would be inconsistent with the way in which the applicant structured its claims and would render the aspects of the claims that describe that functionality superfluous. *See Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so."); *see also* Appx589 (Reply).

### B. "mobile device interface"

Voice Tech also contends that the term "mobile device interface" in claims 5–8 should be construed to mean "a functional component of a computer, which may be implemented in hardware, software, or a suitable combination of hardware and software, that enables the computer to communicate with a mobile device through an appropriate communications medium." VT's Br. 35–38.

The Court should disregard this argument for the same reasons as noted regarding "audio command interface."

First, as the Board correctly noted, Voice Tech's proposed construction would have no impact on the Board's unpatentability analysis. Appx16. Neither the Board nor Unified necessarily disagreed with Voice Tech's proposed construction, but instead concluded that such a construction would not affect the issues in this

case. *See* Appx266 (Institution Decision), Appx590 (Reply) (arguing the term "does not require construction," but that Voice Tech's construction "is reasonable"). Indeed, the Board even gave Voice Tech part of its desired construction by construing "mobile device interface" to "*include* hardware, software, or a combination thereof that enables communication between a computer and a mobile device." Appx16 (emphasis original).

Voice Tech, however, contends that "the Board did rely on [the Board's] construction of MDI [mobile device interface] when it equated MDI with 'built-in services.'" *See* VT's Br. 38; *see also* Appx1254, ¶ 63 (McNair Decl.). But Voice Tech's opening brief never explains how Voice Tech's construction would have impacted whether those "built-in services" disclose a "mobile device interface." Voice Tech does not contend that those "built-in services" are not implemented in hardware, software, or a combination of the two. Nor does Voice Tech dispute that they disclose an "interface" consistent with the definition cited by Voice Tech. *See* VT's Br. 36. Accordingly, without any concrete dispute regarding this term before the Board (or before this Court), the Court need not address the proposed construction. *See Nidec*, 868 F.3d at 1017.

Second, Voice Tech did not challenge the Board's treatment of this term in its rehearing request. *See* Appx835–853 (R'hg Request), Appx51–65 (Decision

Denying R'hg). Accordingly, Voice Tech has forfeited any challenge to that issue. *See Polycom*, 767 F. App'x at 979; 37 C.F.R. § 42.71(d) (requiring a rehearing request to "specifically identify all matters the party believes the Board misapprehended or overlooked").

## III. Substantial evidence supports the Board's unpatentability findings.

### A. Substantial evidence supports the Board's findings that both Wong and the combination of Wong and Beauregard disclose the "receiving" limitations.

The "receiving" limitations simply require "receiving audio data from the mobile device, at the computer, at an audio command interface." *See, e.g.*, Appx74, 10:9–10 (Claim 1). The Board found that Wong alone, or in view of Beauregard, discloses or renders obvious the "receiving" limitations, and those findings are supported by substantial evidence.[2]

#### 1. Wong alone discloses the "receiving" limitations.

The Board correctly found that Wong's speech engine 213 discloses an audio command interface that receives audio data from a mobile device. Appx27 (citing Appx98–103 (Pet.) as citing Appx1280–1282, ¶¶ 12, 25, 30–33, 37–39, 43, Appx1275–1277, Figs. 2, 3, 4a, Appx1257–1258, ¶ 69). Wong explains that its "home

[2] Moreover, Voice Tech did not challenge the "receiving" limitations on rehearing and has forfeited these arguments. *See* Appx835–853, *Polycom*, 767 F. App'x at 979.

PC 210" receives voice commands from a mobile device (e.g., from "smart phone 202"). Appx1281, ¶ 37. Wong further explains that "speech recognition engine 213" in "home PC 210" is "configured to identify voice commands and keywords" from those voice commands. Appx1281, ¶ 32.

As the Board explained, Wong's speech engine meets the plain and ordinary meaning of "audio command interface" because it is an interface between a smart phone and an application on a computer that receives a command from that phone (and parses the command to identify voice commands and keywords that can be used to control the application). Appx28 (citing Appx1275–1277, Figs. 2, 3, 4a, Appx1281–1282, ¶¶ 32, 39, 41). The Board relied on this evidence to support its finding that Wong discloses an audio command interface that receives audio data from a mobile device. Appx27 (citing Appx1280–1281, ¶¶ 12, 32, Appx1275–1277, Figs. 2, 3, 4a). These findings regarding Wong alone are sufficient to support the Board's findings as to the receiving limitation.

On appeal, Voice Tech contends that Wong's speech engine cannot disclose an "audio command interface" because it does not perform all the functionality—found in *other* claim limitations—related to the audio command interface. *See* VT's Br. 40 (arguing that "looking at the actions required of the [audio command interface] in these claims, there is no evidence that Wong's speech engine performs

all of these actions required of the [audio command interface]"). This argument is fundamentally flawed because it attempts to read multiple claim elements, such as the "deciding and selecting" elements, into the term "audio command interface." Even if Voice Tech had included such functionality in its proposed construction of "audio command interface" (which it did not), reading all the functionality related to the audio command interface into that term would be improper, as it would render those other claim elements superfluous. *See Merck*, 395 F.3d at 1372.

It is therefore inapposite whether Wong's speech engine performs the functionality related to the audio command interface found in other limitations of the challenged claims. That functionality is not required by the term "audio command interface" in any proposed claim construction of that term, and, to show that functionality in the context of other claim limitations, Unified and the Board relied on the *combination* of Wong and Beauregard. *See In re Merck & Co.*, 800 F.2d 1091, 1097 (Fed. Cir. 1986) ("Non-obviousness cannot be established by attacking references individually where the [challenge] is based upon the teachings of a combination of references."). Indeed, as discussed below in Section III.C, neither Unified nor the Board relied on Wong alone to disclose the deciding/selecting aspect of the challenged claims. Thus, there is no "contradictory finding" within the

Board's analysis. *See* VT's Br. 41. That is simply the nature of an obviousness combination.

Other than the construction of "audio command interface," which is addressed above in Section II.A and further below in Section III.A.2, Voice Tech raises no other arguments to dispute the Board's finding that Wong discloses the "receiving" limitations. Accordingly, the Court should affirm the findings as to the "receiving" limitations based on Wong alone.

**2. The combination of Wong and Beauregard renders obvious the "receiving" limitations.**

There is also a second, independent basis to affirm the Board's findings regarding the "receiving" limitations because the Board found that the combination of Wong and Beauregard renders obvious the "receiving" limitations. Appx27–28.

Specifically, the Board found that a POSITA would have modified Wong's speech engine to incorporate the more specific teachings found in Beauregard regarding the logic used to receive audio data, specifically based on natural-language voice commands. Appx27 (referring to its earlier analysis in § II.F.4 (Appx23–26) and citing Appx107 (Pet.)); *see also* Appx1253–1258, ¶¶ 63–69. The Board explained that "when Wong's speech engine 213 is modified to include Beauregard's logic to locate scripts associated with commands and to execute the scripts in order to 'launch [] application program(s) 118 or to control functions and features of

application program(s) 118,' the combination teaches accessing and controlling one or more operating systems or applications *without requiring voice command interoperability*." Appx28 (seemingly quoting Appx1333, 16:41–46) (emphasis added).[3] With this finding the Board effectively found that the prior art combination would have rendered the "audio command interface" obvious even under Voice Tech's proposed construction. *See* Appx28.

Voice Tech has not disputed that finding on appeal, but instead briefly contends that a POSITA would not have made such a combination. *See* VT's Br. 42–44. Voice Tech suggests Beauregard has "nothing to teach regarding receiving audio data" because, in Beauregard, the user's speech is sent to third-party software for speech-to-text translation, and MIKE 330 receives that translated text (rather than audio). VT's Br. 41–42. But this argument attacks the references individually and ignores the proposed combination, which is improper. *Merck*, 800 F.2d at 1097. The proposed combination relies on Wong's speech engine as receiving audio data and on Beauregard to show additional logic for receiving audio data, based on natural-language voice commands. Appx107 (Pet.), Appx28. And the Board found that Unified demonstrated why a POSITA would have been motivated to combine Wong

[3] While the Board quotes language from Beauregard at Appx1333, 16:41–46, the Board did not include the citation for that quoted language.

and Beauregard as proposed. *See* Appx24 (citing Appx94–98, as citing Appx1252–1258, ¶¶ 62–69). In short, Voice Tech's argument regarding whether Beauregard's MIKE 330 receives audio data is irrelevant because, in the combination, MIKE 330 is not relied on to show receiving audio data. *See* Appx29.[4]

* * *

Accordingly, Voice Tech has not identified any basis for overturning the Board's factual findings regarding the "receiving" limitations, particularly under the deferential substantial evidence standard of review. The Court should therefore affirm the finding that the prior art discloses or renders obvious the "receiving" limitations.

### B. The Board's findings as to the "decodes" limitations are supported by substantial evidence.

The Board correctly found that Wong alone, or in view of Beauregard, discloses or renders obvious the "decodes" limitations. *See* Appx29–31. Thus, two independent bases exist for affirming the Board's findings as to these limitations.

[4] Voice Tech's additional arguments regarding a motivation to combine Wong and Beauregard, which do not directly pertain to the "receiving" limitation, are addressed in later sections of this brief. *See* VT's Br. 42–44 (arguing there is no reason to combine Wong and Beauregard because they both require a user to preconfigure data and both employ a matching function).

### 1. Wong alone discloses the "decodes" limitations.

Wong itself discloses or renders obvious these limitations. Wong explains that its speech engine 213 "parses the command[s]" in order to "identify voice commands and keywords." Appx1281, ¶¶ 32, 37–39; *see also* Appx1281–1282, ¶¶ 25, 43, Appx1277, Fig. 4a. The Board relied on this evidence to correctly find that "Wong's speech recognition engine 213 decodes received audio data into a command." Appx29–30.

Voice Tech's arguments on appeal focus on Wong's reference to "pars[ing]" the commands, contending that Wong cannot disclose this limitation because "pars[ing]" refers only to performing speech-to-text translation, which Voice Tech believes to be insufficient to disclose this limitation. VT's Br. 45–47.

At the outset, Voice Tech never explains why speech-to-text translation would not disclose the "decodes" limitations—even despite the Board's finding on rehearing that Wong would still disclose these limitations even if Wong were so limited. *See* VT's Br. 45–47, Appx62 n.1. Voice Tech never sought to construe the term "decodes" in this case, and it cannot do so now. Nor would Voice Tech have been successful in seeking to construe "decodes" to exclude speech-to-text translation, given that the '679 patent itself explains that "a voice command can be *decoded* by *determining the equivalent word for a spoken word*," i.e., converting speech

to text. *See* Appx73, 8:25–27 (emphasis added). That alone is sufficient to reject Voice Tech's arguments regarding the "decodes" limitations.

Moreover, Wong goes further and expressly states that its speech engine receives voice commands from the mobile device and "identif[ies] voice commands and keywords." Appx1281, ¶¶ 32, 37–39; *see also* Appx30, Appx62. Voice Tech never explains why "identify[ing] voice commands and keywords" would be insufficient to disclose this limitation. Instead, Voice Tech merely suggests in one conclusory sentence that "[t]here is no support, however, for the finding that 'decoding' should be defined to mean 'identifying.'" VT's Br. 47. But again, Voice Tech has not sought to construe this term, and the opportunity to do so has long since passed.

Finally, even if Voice Tech's factual argument that Wong's "pars[ing]" is limited to speech-to-text translation were pertinent, Voice Tech presents hardly any evidentiary support for that factual position. The only evidence Voice Tech cites is a parenthetical in Wong's discussion of Figure 4b, which is *not* the embodiment of Wong that Unified or the Board relied on. *See* VT's Br. 46 (citing Appx1282, ¶ 45). In Wong's Figure 4a (on which Unified relied), the computer receives an "audio note" with a voice command, while in Wong's Figure 4b, the computer receives text from a voice command that has already been parsed by the smart phone. *Compare*

Appx1282, ¶ 43, *with* Appx1282, ¶ 45. The Board cited the fact that Voice Tech's argument was based on an embodiment that Unified did not rely on as an additional basis for rejecting Voice Tech's argument as to these limitations. Appx30–31.

Accordingly, the Board's findings that Wong alone discloses the "decodes" limitations are supported by substantial evidence. That is sufficient to resolve Voice Tech's arguments on appeal as to the "decodes" limitations.

#### 2. The combination of Wong and Beauregard also renders obvious the "decodes" limitations.

The Board also found that the "decodes" limitations would have been obvious over the combination of Wong and Beauregard. This provides a second, independent basis for affirming as to these limitations.

Unified's Petition explained, as an alternative argument, that Beauregard discloses decoding an audio command into a command by matching the audio data with a series of commands. Appx108–109. The Board agreed, finding "Beauregard's MIKE 330 includes logic for recognizing a command from received audio data that has been converted into text." Appx30 (citing Appx1339–Appx1340, 28:65–29:1, Appx1299, Fig. 4). More specifically, Beauregard converts voice data to text, and that text is ultimately passed to MIKE 330's fetcher 420. Appx1339, 28:56–59, 28:65–29:1, Appx1299, Fig. 4. Beauregard's fetcher searches a wordbase for matching action words and, if one is found, returns a script associated with that word.

Appx1339–1340, 28:56–59, 29:9–12. In the combination, Wong's speech engine is modified to include logic from Beauregard, including to allow it to identify commands for operating systems and applications (in addition to Wong's application 220). Appx31.

In attacking this combination, Voice Tech notes that Beauregard's fetcher does not directly receive audio data, but instead receives the audio as text that has been translated using third-party voice-to-text software. VT's Br. 48–49. This argument is inapposite, as it ignores the proposed *combination*, in which Wong already includes speech-to-text translation and Beauregard is merely used for additional functionality. *See* Appx31. As the Board correctly reasoned, "[n]on-obviousness cannot be established by attacking references individually where the [challenge] is based upon the teachings of a combination of references." *Merck*, 800 F.2d at 1097; *see also* Appx31. That is exactly what Voice Tech's argument does here, and it should be rejected for that straightforward reason.[5]

Voice Tech disputes whether it would have been obvious to combine Wong and Beauregard, but Voice Tech's arguments again ignore the combination and the

[5] To the extent Voice Tech raises arguments regarding Beauregard's teachings related to other claim limitations (such as the "selects" limitations), Unified addresses those arguments as necessary when addressing those limitations. *See* VT's Br. 50.

reasons why a POSITA would have made such a combination. *See* VT's Br. 50–51. For example, Voice Tech argues "a POSITA would not have been motivated to combine [Wong and Beauregard]" because "Beauregard does not even disclose or teach its own speech-to-text software." VT's Br. 50–51. But Voice Tech does not explain why Beauregard's use of third-party software would discourage a POSITA from combining Wong and Beauregard. Regardless, the combination did not rely on Beauregard to show speech-to-text software. The combination teaches "modifying Wong's speech engine 213 to allow it to select at least one operating system or at least one application in response to receiving an audio command." Appx29. Beauregard's use of third-party software does not affect the proposed combination.

Voice Tech also contends that Wong and Beauregard "both disclose speech-to-text translation followed by a matching function" and that "[t]herefore, there is no reason for a POSITA to be motivated to combine Beauregard's matching function into Wong's speech engine." VT's Br. 51; *see also id.* at 42–44. But, again, Beauregard was not combined with Wong to show a "matching function." As explained later in the Board's Decision, Wong alone shows a matching function. *See* Appx32 ("Wong then searches keyword database 225 'to identify a match with the parsed command.'" (citing Appx1277, Fig. 4a, step 406)). Beauregard was combined with Wong to show selecting "commands to control a variety of services, including

commands for the operating system and multiple applications." Appx33 (citing Appx112).

Finally, Voice Tech states that there would be no need to decode audio data into a command because the instructions are preconfigured. *See* VT's Br. 50.[6] Though it is not clear how preconfiguration pertains to the "decodes" limitations, in any event, the argument was not raised until Voice Tech's Sur-reply before the Board and, thus, should not be considered on appeal. *See* Appx377–382 (Patent Owner Resp.), Appx697. In fact, the only evidence Voice Tech cites for this argument is evidence the Board expressly struck and expunged from the proceeding as improper sur-reply evidence. *See* VT's Br. 50 (citing Appx3119–3120), Appx747–753 (Order striking and expunging the Sur-Reply Declaration of Dr. Caloyannides, Ex. 2040, as improper). Because Voice Tech has not challenged the Board's Orders striking and expunging that evidence, that evidence cannot be considered on appeal, and the Court should not consider this argument. And, regardless, the relevant sentence from that expunged testimony cites no evidence and provides no further explanation than the conclusory sentence in Voice Tech's appeal brief. *Compare* VT's Br. 50, *with* Appx3120, ¶ 4.

---

[6] Voice Tech raised its preconfiguration argument with respect to the "deciding/selecting" limitations, which are addressed in the following section of this brief. *See infra* Section III.C.

Accordingly, the combination of Wong and Beauregard provides a second, independent basis for affirming the Board's findings regarding the "decodes" limitations.

### C. Substantial evidence supports the Board's findings regarding the "deciding/selecting" limitations.

The "deciding/selecting" limitations require the audio command interface to select one operating system or one application from at least one operating system and at least one application that the audio command interface decides is the appropriate operating system or application to execute at least one process in response to a command. *See, e.g.*, Appx74, 10:13–18.

Unified and the Board relied on the combination of Wong and Beauregard to show this limitation in the prior art. Appx32–35 (citing Appx109–112 (Pet.) as citing Appx1328, 5:42–46, Appx1330, 9:5–26, 10:12–21, 10:41–65, Appx1333–1334, 16:41–46, 17:37–41, Appx1339, 27:47–28:16, Appx1299, Fig. 4, Appx1305, Fig. 10, Appx1253–1258, ¶¶ 63–69).

As explained previously, Wong's speech engine discloses an "audio command interface" that receives audio data from a mobile device and decodes it into a command. Wong then searches a keyword database "to identify a match with the parsed command." Appx1281, ¶ 39; *see also* Appx1277, Fig. 4a, step 406. If a match

is found, Wong executes that command to control Wong's photo application. Appx1277, Figure 4a, step 412; *see also* Appx1281–1282, ¶¶ 40–41, Appx1275, Fig. 2.

Beauregard provides similar functionality, but further provides that natural-language voice commands may be used to operate software applications or an operating system. Specifically, Beauregard stores user-defined action words in a database (a wordbase), along with service scripts associated with those action words. Appx1328, 5:12–26, 5:39–42, Appx1334, 17:33–36, Appx1299, Fig. 4. Voice commands are converted to text, which is then forwarded to the command interpreter in Beauregard's MIKE 330. Appx1333, 16:63, Appx1339, 28:65–29:5. The command interpreter forwards the input to the fetcher, which searches the wordbase for matching action words and their associated scripts. Appx1330, 9:17–20, Appx1339, 28:56–64. If a match is found, the fetcher sends the script back to the command interpreter, which executes the script. Appx1328, 5:44–46, Appx1340, 29:9–14, Appx1333, 16:41–46.

Beauregard explains that the service scripts may perform a variety of services, including "caus[ing] an operation to be performed by a software application, a utility program, or by the operating system (e.g., opening a word processing document)." Appx1339, 28:11–14. Accordingly, the scripts allow the user "to launch applications, navigate within applications and control application functions by using their natural

language." Appx1328, 5:49–51, Appx1330, 9:22–26, 10:41–44. Unified explained this process, with supporting evidence, in its Petition. Appx109–112.

Unified demonstrated that a POSITA would have been motivated to modify Wong's system to incorporate Beauregard's disclosures related to using voice commands to select commands to control both operating systems and applications, and the Board agreed. Appx33; *see also* Appx112 (Pet.) (citing Appx1253–1258, ¶¶ 63–69). That finding is supported by expert testimony of Mr. McNair. Appx1253–1258, ¶¶ 63–69.

Voice Tech's primary argument is that Beauregard does not disclose the "deciding/selecting" limitations because, in Beauregard, the action words are preconfigured and defined by a user. VT's Br. 53–54. In Voice Tech's view, this means that "[i]t is the user that decides what action will occur," rather than some "component" making that decision. *See id.* at 53–54, 56.

In rejecting this argument, the Board expressly credited the testimony of Unified's expert, Mr. McNair, who explained that, at the time of the invention, a POSITA would have understood that "computer systems 'decide' to perform operations based on preconfigured instructions." Appx2739–2740, ¶ 7, Appx34. He further explained that "[i]n computer programming, these 'decisions' describe the operation of standard program code," including "two basic types of decision

structures," such as "the '*if-then-else*' construct and the '*case*' construct." Appx2740, ¶ 7 (emphasis original). Voice Tech never directly addresses or disputes this testimony on appeal, and that evidence is sufficient to reject Voice Tech's arguments. At most, Voice Tech cites evidence from its expert that the Board expressly struck and expunged from the proceeding as improper. VT's Br. 56 (citing Appx3123), Appx747–753. That evidence may not be considered on appeal.

In addition to Mr. McNair's testimony regarding the knowledge of one of skill in the art, the '679 patent's specification also expressly contemplates that the instructions selected in the decision-making process are "predetermined." Appx71, 3:55–59 (referring to determining "whether voice data corresponds to one of two or more predetermined audio commands"); *see also* Appx72, 6:7–10 (describing "determin[ing] whether the voice data matches one or more predetermined commands"). For example, the '679 patent describes "a file of available operating system commands" and "predetermined commands for native applications." Appx71, 4:7–11, 4:26–36. Though Voice Tech attempts to distinguish some of these passages as more relevant to the "decodes" limitations discussed above, Voice Tech once again improperly relies on evidence that the Board expressly struck and expunged from the proceeding as improper. VT's Br. 55 (citing Appx3121–3122); Appx747–753 (Order striking and expunging the Sur-reply Declaration of Dr.

Caloyannides, Ex. 2040, as improper). Thus, that evidence cannot be considered on appeal. Regardless, Voice Tech's argument misses the point: those specification passages confirm that the ultimate instructions that will guide the system's behavior are, indeed, "predetermined." Appx71–72, 3:55–59, 6:7–10; *see also* Appx71, 4:7–15.

Although Voice Tech briefly raises other arguments regarding these limitations, each of those arguments similarly fails.

For example, Voice Tech contends a POSITA would not have sought to modify Wong with Beauregard because both references "disclose and teach systems where the user preconfigures the system." VT's Br. 54–55. But, as explained above, Beauregard contains additional concepts that would have been useful in Wong, such as controlling both an operating system and various applications. Appx1339, 28:11–14 ("caus[ing] an operation to be performed by a software application, a utility program, or by the operating system (e.g., opening a word processing document)"). Voice Tech does not contend that Wong has that functionality, thus undermining its suggestion that the references are so similar that there would be no reason to combine them. Voice Tech's argument is therefore factually misplaced. Moreover, that argument is also legally flawed. Similarity in functionality between references actually *supports* a finding of obviousness because the combination would merely "unite[] old elements with no change in their respective functions" and substitute

one option for another. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416 (2007); *see also id.* ("[W]hen a patent claims a structure already known in the prior art that is altered by the mere substitution of one element for another known in the field, the combination must do more than yield a predictable result.").

Voice Tech is also incorrect to state that Unified's Petition failed to address the "deciding" limitations. VT's Br. 55. The Petition expressly mapped the "deciding" portion of this limitation to Beauregard's decision to select the appropriate operating system or application to execute "based on the commands contained in the service scripts corresponding to the audio commands received." Appx111–112. Unified's Reply merely responded directly to Voice Tech's argument (discussed above) that "decides" requires something more than the use of preconfigured instructions (as in Beauregard). Appx598 (citing Appx2739–2743, ¶¶ 7–13). There was never any question as to whether Unified relied on Beauregard's preconfigured instructions to show this limitation. Indeed, the fact that Voice Tech used its Patent Owner Response to substantively dispute whether those preconfigured instructions were sufficient to disclose this limitation confirms as much. *See* Appx382–386. And, even if there had been any doubt (which there was not), the Board's Institution Decision also viewed the Petition as mapping Beauregard's preconfigured "scripts" to this limitation, thereby placing Voice Tech

on further notice. Appx276 (Institution Decision). Accordingly, Voice Tech's contention that this was somehow a new argument in Unified's Reply should be squarely rejected. And, in any event, Voice Tech never filed a motion to strike any arguments it thought to be improper, thereby forfeiting the issue. *See* Consolidated Trial Practice Guide, pp. 80–81.[7]

Finally, in one sentence, Voice Tech suggests that the Board applied an "incorrect construction of 'deciding,'" seemingly based on its same argument that "deciding" cannot involve use of preconfigured instructions. VT's Br. 55. Voice Tech never sought a construction of that term, and it has not done so on appeal. *See* Appx347–355, Appx678–679. Thus, Voice Tech has forfeited any claim construction position it might have raised. And, regardless, as discussed above, a POSITA would have understood that "computer systems 'decide' to perform operations based on preconfigured instructions." Appx2739–2740, ¶ 7, Appx34, and the '679 patent's specification contemplates "predetermined" instructions. Appx71, 3:55–59; *see also* Appx72, 6:7–10, Appx71, 4:7–11, 4:26–36. There would be no basis to construe "deciding" in a way that excludes preconfigured instructions.

[7] The Board's Consolidated Trial Practice Guide is available at https://www.uspto.gov/sites/default/files/documents/tpgnov.pdf?MURL=.

In sum, Voice Tech's arguments regarding the "deciding" limitations merely express disagreement with the Board's factual findings, yet provide no basis to overturn those findings in light of the substantial evidence supporting the Board's reasoning. Moreover, Voice Tech did not challenge these limitations on rehearing and has forfeited these arguments. *See* Appx835–853, *Polycom*, 767 F. App'x at 979. The Court should therefore affirm the Board's findings as to these limitations.

## IV. Unified's evidence demonstrated obviousness as of the time of the invention.

Voice Tech's separately contends that Unified's obviousness analysis was based on hindsight because it did not focus that analysis on what a POSITA would have found obvious at the time of the invention. *See* VT's Br. 56–60. The Board correctly rejected this argument because Unified's expert conducted the obviousness analysis from the perspective of a POSITA at the time of the invention.

The Board identified substantial evidence, provided by Unified, that a POSITA would have been motivated to combine Wong and Beauregard "at the time of the invention." Appx24, Appx26. In particular, the Board emphasized at least three statements from Mr. McNair confirming that he conducted his obviousness analysis correctly. First, Mr. McNair testified regarding his awareness that "a person cannot obtain a patent . . . if the differences between the invention and the prior art are such that the subject matter as a whole would have been obvious to a person

having ordinary skill in the art . . . at the time of the invention." Appx1220, ¶ 12. He also explained his understanding that, "for a patent claim to be found obvious, the proper perspective to consider is that of a person having ordinary skill in the art . . . at the time of the alleged invention." Appx1221, ¶ 14. And, Mr. McNair went even further, explaining that "the obviousness inquiry should be done through the eyes of a person having ordinary skill in the art at the time of the alleged invention." Appx1220, ¶ 12; *see also* Appx1222, Appx1224. The Board found that Unified's analysis addressed obviousness as of the time of the invention because it "relies on and cites the declaration of Mr. McNair." Appx24.[8]

Voice Tech responds to that evidence by contending that Mr. McNair's numerous statements articulating "the legal standards of obviousness" are not enough. VT's Br. 59. But nowhere does Voice Tech explain what specifically about the Petition or Mr. McNair's declaration is substantively improper. For instance, there is no contention that Unified or its expert relied on evidence post-dating the alleged invention. Voice Tech also does not explain why the multiple times Mr. McNair acknowledged the "at the time of the invention" standard in his analysis

[8] Voice Tech acknowledges this evidence (VT's Br. 59), yet still somehow maintains that "Unified completely failed to argue or submit *any evidence* to support why a POSITA at the time of the invention would have been motivated to combine Wong and Beauregard." VT's Br. 57 (emphasis altered).

pertaining to combining known elements (*see* Appx1222–1224, ¶¶ 16–18) should not be read as part of his understanding of the obviousness analysis. *See* Appx24. Nor does Voice Tech address Mr. McNair's discussion of level of skill in the art, which focused on level of skill at "the time of the claimed invention" (that time being June 4, 2007). *See* Appx1230, ¶ 29; *see also* Appx1230–1231, ¶¶ 30–31, Appx11, Appx24. In short, Mr. McNair's analysis was replete with statements confirming that he conducted his obviousness analysis from the perspective of a POSITA at the time of the alleged invention.

As with many of Voice Tech's other arguments in this appeal, this argument appears to be based on nothing more than an allegation that Unified (and its expert) did not use specific words in what Voice Tech views to be the right location. For instance, Voice Tech appears to take issue with Unified's Petition for not explicitly reciting the phrase "at the time of the invention" in the Petition's motivation to combine section. *See* VT's Br. 57; *see also* Appx94–98 (Pet.). But the Petition relied on Mr. McNair's testimony, and that testimony was provided according to an analysis performed based on the time of the alleged invention, as already noted. *See* Appx1220–1221, ¶¶ 12, 14.

As if the repeated statements from Mr. McNair's testimony were not enough, several of the motivations to combine themselves confirm that the motivation-to-

combine analysis was conducted from the perspective of a POSITA at the time of the alleged invention. Indeed, those rationales were taken directly from the prior art, which predates the ’679 patent. *See* Appx95–96 (Pet.); Appx1254–1255, ¶ 65 (McNair Decl.) (“both *Wong* and *Beauregard* provide express motivations for the combination”).[9] The Board cited to and relied on these motivations. *See* Appx24 (citing Appx1252–1258, ¶¶ 62–69 (McNair Decl.)).

Voice Tech relies extensively on this Court’s decision in *InTouch* to contend that Mr. McNair’s analysis in this case was insufficient. But, as the Board correctly noted, the analogy to *InTouch* breaks down due to several factual differences.

First, in *InTouch*, the Court found that “[n]ot once during [the expert’s] direct examination regarding the [] patent did she analyze what one of skill in the art would have understood as of [the time of the invention].” 751 F.3d at 1352; *see also* Appx25. In contrast, the Board found that “Mr. McNair’s opinions . . . are made with the understanding [of] ‘the obviousness inquiry . . . *at the time of the invention.*’” Appx26 (citing Appx1220, Appx1222, Appx1253–1254).

---

[9] “*Wong* provides express motivation to apply its system to different contexts” including “any other type of electronic file.” Appx1254–1255, ¶ 65 (McNair Decl.) (quoting Appx1281, ¶ 33). Similarly, “*Beauregard* provides additional express motivation for applying its techniques, explaining that its system . . . allows a user to ‘improve his productivity’ and ‘eliminat[e] repetitive effort.’” *Id.* (quoting Appx1353, 55:21–34).

Second, the Court in *InTouch* held that the expert's reasoning was "vague" and "conclusory." 751 F.3d at 1351–52; *see also* Appx25. Relatedly, the Court criticized the expert's reasoning as merely explaining that a POSITA "*could* combine these references, not that they *would* have been motivated to do so." *InTouch*, 751 F.3d at 1352 (emphasis original). In contrast, the motivations to combine provided by Mr. McNair were directly supported by the prior art and specifically explained why a POSITA *would* have been motivated to combine the references as proposed. *See, e.g.*, Appx1254–1255, ¶ 65 (explaining that Wong contemplated using its system for applications other than Wong's photo application, but lacks the detail that Beauregard discloses regarding how to select an appropriate application); *see also* Appx1252–58, ¶¶ 62–69, Appx1268–1271, ¶¶ 84–88 (McNair Decl.), Appx24.

Third, the Court further faulted the expert's testimony for failing to address "objective evidence of nonobviousness." *InTouch*, 751 F.3d at 1352; Appx26. Here, Voice Tech has not provided any such evidence. *See* Appx26.

Accordingly, the facts in *InTouch* differed significantly from those in the present case, and that case does not support Voice Tech's positions here. The Court should therefore affirm the Board's reasoning that a POSITA would have been

motivated to combine Wong and Beauregard at the time of the invention based on the substantial evidence cited by the Board.[10]

## V. Substantial evidence supports the Board's finding that the prior art discloses the "mobile device interface" of claims 5–8.

Voice Tech's appeal rests on a perceived failure of the Petition to address the "mobile device interface" limitations. As the Supreme Court held in *Cuozzo Speed Technologies, LLC v. Lee*, the adequacy of the petition relates to the propriety of institution and is not reviewable. 579 U.S. 261, 275–76 (2016). And even if the issue were reviewable, Voice Tech's challenge lacks merit. As the Board found, the Petition addresses the mobile device interface limitations, the arguments are supported with substantial evidence, and Voice Tech had ample notice and opportunity to respond to each of Unified's obviousness grounds. For each of these reasons, the Board's finding that claims 5–8 are unpatentable as obvious should be affirmed.

---

[10] Moreover, Voice Tech did not raise this issue on rehearing and has forfeited the issue. *See* Appx835–853, *Polycom*, 767 F. App'x at 979.

### A. The Board's finding that the prior art discloses the mobile device interface is supported by substantial evidence.

The Board found that the prior art discloses the "mobile device interface" limitations of claims 5–8. Appx42, Appx46. That finding followed from a thorough substantive analysis and is supported by substantial evidence. *See* Appx42–47.

Claims 5 and 7 recite a system for performing the methods of claims 1 and 3, respectively. Appx280 (*comparing* Appx74, 10:7–25, *with* Appx74, 10:30–45 and Appx75, 11:10–12:12). As relevant to this appeal, limitations 5.8 and 7.8 recite "wherein a *mobile device interface* at the computer transmits the output data to the mobile device" (the "mobile device interface limitations"). Appx75, 11:4–5 [5.8], 12:11–12 [7.8] (emphasis added). The Board held that "mobile device interface" includes any combination of hardware or software "that enables communication between a computer and a mobile device." Appx16.

In finding that the combination discloses the mobile device interface limitations, the Board first considered Wong and the evidence explaining what a POSITA would understand from that reference. Wong provides a graphical depiction of a network system as follows:




Appx1273.

The Petition and supporting evidence show that "Wong's PC 210 transmits generated output data to mobile device 202 over a GPRS network." *See* Appx119–121 (Pet.) (citing and quoting Appx1282, ¶ 68, Appx1276, Fig. 3); *see* Appx42 (citing same). Wong's Figure 3 visually demonstrates such an output data transfer from the computer. *See* Appx119–121 (citing Appx1281, ¶ 41 and Appx1276, Fig. 3); *see also* Appx1243.




FIG. 3

Appx1276; *see also* Appx1282, ¶ 41 ("Referring back to Fig. 3, at block 314, the home PC 210 executes the commands received at block 312 and transmits data and/or files to the device.").

The evidence further shows that Wong and Beauregard, considered together, "disclose[] a system in which, upon receiving a natural-language voice command from a remote mobile device, *a computer* analyzes the input, determines whether the command applies to a function of an operating system or one of a plurality of applications, executes the command using the appropriate system operation or

application, *and outputs relevant data to the mobile device.*" Appx93–94, as supported by Appx1253–1254, ¶ 63 (McNair Decl.) (emphasis added). And the unrebutted expert testimony of Mr. McNair further shows that "[t]o a POSITA, transmitting the output data would entail common steps regardless of whether it was generated via an operating-system or application command because computer applications generally used *built-in services* of the computer operating system [i.e., a mobile device interface] to provide a means to transmit output data to other applications, operating systems or devices." Appx42–43, Appx45, Appx57–61, Appx121 (citing Appx1253–1257) (italics and brackets added).

In other words, the prior art, as understood by a POSITA at the time of the invention, discloses a computer operating system that contains a mobile device interface that transmits output data to a mobile device as recited in limitations 5.8 and 7.8. Appx42, Appx58; *accord* Appx281 (Institution Decision).

Voice Tech does not directly dispute the substantial evidence supporting the Board's findings with respect to claims 5 and 7. Instead, Voice Tech's appeal rests on the erroneous presumption that Unified failed to articulate the application of this evidence specifically to the mobile device interface limitations. To the extent Voice Tech's argument challenges the adequacy of the Petition to support institution, the question is not reviewable under *Cuozzo* (as discussed in more detail in Section V.B).

To the extent Voice Tech's arguments can be viewed as addressing the merits of the Board's unpatentability determination at the Final Written Decision, the arguments lack merit. Indeed, the Board was well within its discretion to find that the Petition and supporting evidence adequately addressed the mobile device interface limitations, and Voice Tech received more than adequate notice and opportunity to respond to the arguments and evidence. *See infra* Section V.C.

### B. Whether the Petition adequately articulates the grounds for finding claims 5 and 7 unpatentable is part of the Institution Decision and is not reviewable.

Voice Tech criticizes Unified for allegedly "fail[ing] to address the MDI as part of its claim 5 [or claim 7] argument." VT's Br. 13, 15. Because Voice Tech's challenge relates to the adequacy of the Petition to support institution, however, the question is not reviewable. *Cuozzo*, 579 U.S. at 275–76.

In *Cuozzo*, as in the present case, the patent owner complained that the Board should not have considered dependent claims that were never separately mentioned or addressed in the petition. *Id.* at 271. In response, the Government argued the petitioner need not separately analyze each claim that obviously rises and falls on the same facts and arguments as the claims expressly addressed in the petition. *Id.* at 271–72. The Supreme Court did not reach the merit of this dispute. Instead, recognizing the patent owner's challenge to the particularity of the grounds raised in

the petition to be an attack on the "determination . . . whether to institute" review, the Court held appellate review was prohibited under 35 U.S.C. § 314(d). *Id.* at 272, 276.

Notably, here, Voice Tech's appeal does not challenge the Board's treatment of the evidence supporting its findings related to the mobile device interface limitations. Instead, Voice Tech argues that the Board should not have been allowed to consider that evidence because the Petition allegedly fails adequately to cite to it in the context of the mobile device interface limitations. *See, e.g.*, VT's Br. 13 ("Thus, Unified failed to include the MDI in its claim 5 chart, and it failed to address the MDI as part of its claim 5 argument."); *id.* at 14 ("Unified completely failed to address the MDI in its discussion of claim 5"); *id.* at 15 ("Unified completely failed to refer to the MDI in its claim 7 argument, and there is no basis whatsoever to look to the discussion of claim 1 for arguments regarding the MDI."); *see also id.* at 16–17. In this regard, Voice Tech makes the same procedural argument as the patent owner in *Cuozzo*, going to the adequacy of the petition to support institution on grounds allegedly not asserted rather than the final merit of the Board's treatment of the evidence on those grounds. Voice Tech's challenge should, therefore, be found not reviewable for the same reasons articulated in *Cuozzo*.

To be sure, Voice Tech attempts to avoid *Cuozzo* by couching its argument in terms of an alleged lack of evidence regarding the mobile device interface limitations and disclaiming any challenge to institution. *See* VT's Br. 17 n.7. But these self-serving disclaimers cannot mask the true nature of Voice Tech's arguments, which are almost identical to the underlying issue in *Cuozzo*—i.e., whether claims allegedly not adequately called out separately in the Petition can be considered during an IPR proceeding.[11] Notwithstanding Voice Tech's efforts to recast its arguments on appeal, even a cursory reading of the arguments reflects that Voice Tech's challenge is a challenge to whether the Petition was pleaded "with particularity," which is "little more than a challenge to the Patent Office's conclusion, under §314(a), that the 'information presented in the petition' warranted review" and is, therefore, not reviewable. *Cuozzo*, 579 U.S. at 276.

---

[11] In a footnote, Voice Tech cites *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1374 (Fed. Cir. 2016), for the proposition that the Court maintains jurisdiction to review determinations made during institution "that are subsequently incorporated into the Board's final written decision." VT's Br. 10 n.5. *Magnum* stands for the unremarkable proposition that *Cuozzo* does not prohibit review of a merits determination made in the Final Written Decision simply because that determination was previewed in the Institution Decision. *Id.* at 1374. *Magnum* does not open the door for appellate review of the precise question addressed in both *Cuozzo* and the present appeal—a challenge to the adequacy of the allegations in the Petition. To hold otherwise would be to allow the exception to swallow the rule.

### C. In any event, the Board did not abuse its discretion in finding the grounds for limitations 5.8 and 7.8 adequately addressed.

Voice Tech accuses Unified of "completely fail[ing] to include or address the 'mobile device interface.'" VT's Br. 7, 9–28. To be sure, the scope of *inter partes* review is guided by the grounds asserted in the petition. *See* 35 U.S.C. § 312 (requiring grounds to be stated with particularity). But Voice Tech's arguments are based on an unnaturally narrow reading of the Petition that the Board was well within its discretion to reject. *See Intelligent Bio-Sys.*, 821 F.3d at 1367; *see also Cameron Int'l Corp. v. Nitro Fluids, L.L.C.*, No. 2021-1183, 2022 WL 636099, at *6 (Fed. Cir. Mar. 4, 2022) (non-precedential) ("[W]e review the Board's findings concerning whether arguments are fairly presented for abuse of discretion.").

A basic understanding of the relationship between claims 1 and 3 and claims 5 and 7 provides context for the Petition. Claim 1 recites a method of accessing and controlling a computer from a mobile device. Appx27 (citing Appx 74, 10:7–10). As relevant to the issues on appeal, the final step of claim 1 requires "transmitting the output data to the mobile device." Appx37 (citing Appx 74, 10:25). Claims 5 and 7 simply recite the *system* for performing the *method* of claims 1 and 3, respectively. Appx280 (citing to Appx74, 10:7–25 (claim 1), 10:30–45 (claim 3), 10:50–67 (claim 5); *see also* Appx75, 11:4–5 (claim 5), Appx75, 12:11–12 (claim 7).

In the Petition, Unified provided a detailed analysis of claim 1, explaining limitation-by-limitation why Wong in view of Beauregard renders the claimed invention obvious. *See, e.g.*, Appx98–121. Rather than repeat the same analysis multiple times in the Petition, the claim 1 analysis not only demonstrates "how the combination of Wong and Beauregard performs the 'transmitting' function" (relevant to claim 1), but also identifies the structure (i.e., mobile device interface) that performs the function (relevant to claims 5 and 7). Appx58 (R'hg Decision) (citing Appx42). As the Board recognized, the arguments and testimony under claim 1 that explain a POSITA's understanding that "'computer applications generally used built-in services of the computer operating system to provide a means to transmit output data to other . . .devices' . . . is not needed to demonstrate how the claim 1 'transmitting' limitation is met." Appx43. Instead, the reference in the discussion of claim 1 about the computer's built-in services "demonstrates how the combination of Wong and Beauregard teaches the claim 5 and 7 limitation that not only requires the same 'transmitting' function to be performed, but also requires the structure that performs that function, i.e., the mobile device interface." Appx43.

Then, in mapping claims 5 and 7, the Petition includes a chart that cross-references the arguments and evidence from claim 1. This made sense given the substantive similarities between claims 1, 3, 5, and 7. The chart very clearly intends

to address each limitation of claim 5/7. The first column identifies the claim limitation. The second quotes the limitation. And the third identifies the reasoning from "corresponding limitations" that support finding claims 5/7 obvious. Appx131. Thus, for example, with respect to limitations [5.0]–[5.3], the chart provides as follows:

| | **Claim 5** | **Cross-References** |
|---|---|---|
| [5.0] | *A system for accessing and controlling a computer from a mobile device, comprising:* | [1.0] |
| [5.1] | *a computer;* | [1.0], see additional explanation below |
| [5.2] | *a communications medium that couples the mobile device to the computer; and* | [2.1], see additional explanation below |
| [5.3] | *an audio command interface, at the computer, the audio command interface:*<br><br>*receives audio data from the mobile device;* | [1.1] |

Appx131. In each instance, the second column quotes from claim 5 and then references in the last column which earlier portion of the Petition addresses the limitation, with one exception. Under the headings 5.8/7.8, Unified mistakenly quoted the cross-referenced limitation 1.6—"transmitting the output data to the mobile device"—instead of reciting the language from limitation 5.8/7.8—"wherein

a mobile device interface at the computer transmits the output data to the mobile device." *Compare* Appx132, Appx135, *with* Appx74–75.

Voice Tech faults Unified for failing to use the term "mobile device interface" in its claim charts. But, as the Board found, there can be no real confusion that the Petition was addressing the mobile device interface limitations 5.8 and 7.8. Appx42. The misquote to limitation 1.6 rather than 5.8/7.8 in the charts was simply a "clerical error." Appx58 (R'hg Decision) (quoting Appx42 (FWD), Appx281 (Institution Decision)). And the Petition expressly referred back to the reasoning provided under limitation 1.6 to support limitations 5.8/7.8. *See* Appx132, Appx135.

In some instances, the chart also identifies "additional explanation" beyond the cross-reference to explain "the limitations with differences." *See, e.g.*, Appx131, limitation 5.1. Voice Tech interprets this guidance as a concession by Unified that "any differences between claim 5 and claims 1 and 2" were required to be addressed separately from the cross-referenced analysis within the portion of the Petition under the claim 5 and claim 7 headings. *See, e.g.*, VT's Br. 12. But this misreads the Petition. Certainly, to the extent the cross-referenced section of the Petition did not address all the arguments and evidence necessary to explain a limitation, such explanation was further explained. But such an additional explanation was not necessary with respect to the mobile device interface limitations. Those limitations cross-referenced

claim limitation 1.6, which had already addressed the prior art from the perspective of both the "method" and "system" possibilities. In other words, there was no need to provide additional explanation with respect to the mobile device interface limitations because the system had already been discussed in the context of the cross-referenced limitation 1.6. Appx42.

In sum, the cross-reference chart clearly delineated limitations 5.8 and 7.8. No reasonable person could have misunderstood which limitation the chart intended to address. And, the portion of the Petition addressing limitation 5.8/7.8 refers back to the analysis of limitation 1.6. The discussion of limitation 1.6, in turn, addresses not only the "transmitting" limitation 1.6, but also the added mobile device interface required by limitation 5.8/7.8. Under these facts, the Board acted within its discretion in finding that the Petition disclosed the grounds supporting unpatentability of limitations 5.8 and 7.8 with sufficient particularity. *See, e.g., Intellectual Ventures I LLC v. EMC Corp.*, 786 F. App'x 1021, 1031–32 (Fed. Cir. 2019) (non-precedential) (finding arguments incorporated from other portions of petition provided "legally adequate notice of and support for" unpatentability ground); *AMP Plus, Inc. v. DMF, Inc.*, 2022 WL 16844516, at *5 n.2 (Fed. Cir. Nov. 10, 2022) (non-precedential) (finding that Board did not abuse its discretion in finding that grouping of arguments and analysis in petition did not violate

requirement to state grounds of unpatentability with particularity); *cf. Uniloc 2017 LLC v. Facebook, Inc.*, 2021 WL 5370480, at *7–8 (Fed. Cir. Nov. 18, 2021) (non-precedential) (finding Board abused its discretion by failing to appreciate the grounds raised in petition upon reading of petition as a whole).

### D. The Board did not rely on new arguments raised for the first time on reply; it adopted the arguments raised in the Petition.

Voice Tech further faults the Board for purportedly (1) creating an argument Unified never made; and (2) erroneously accepting Unified's reply arguments and evidence further supporting that argument. VT's Br. 10, 17–19, 28–30. But the Board did not create a new argument. As discussed at length above in Sections V.A. and V.C, the Petition squarely and thoroughly addresses the grounds supporting obviousness of the mobile device interface limitations. The Board's analysis is supported entirely by citations to the Petition and supporting evidence. *See, e.g.*, Appx42–47.

The two cases relied upon by Voice Tech are inapposite. In *Elbit Systems of America, LLC v. Thales Visionix, Inc.*, for instance, it was undisputed that the asserted prior art did not explicitly disclose the same three-step method as the patented invention. 881 F.3d 1354, 1357 (Fed. Cir. 2018). Thus, the question of obviousness turned on a battle between the experts regarding what a POSITA would have understood from the teachings of the prior art. *Id.* The Board credited the testimony

of patent owner's expert over that of the petitioner's, a determination which the Federal Circuit affirmed after noting that the Board is entitled to weigh the credibility of the witnesses. *Id.* at 1358. Here, in contrast, the Board credited the testimony of Unified's expert and cited to record evidence in support of its findings. Indeed, the Board explicitly distinguished *Elbit* on its facts. The Board explained:

> Here, unlike in *Elbit*, we find Mr. McNair's testimony that an operating system's "built-in services" are a means to transmit output data to a mobile device to be credible, and agree with Petitioner that such "built-in services" map to our construction of a "mobile device interface." *See* Pet. 41 [Appx121] (identifying "built-in services" as the "means to transmit output data"); Pet. Reply 3 [Appx591] (demonstrating how "built-in services" map to our construction of a mobile device interface).

Appx45. The same deference to the Board's treatment of the evidence in *Elbit* thus supports affirmance of the Board's findings in favor of Unified here.

Similarly, in *Choirock Contents Factory Co., Ltd. v. Saucier*, 801 F. App'x 754 (Fed. Cir. 2020) (non-precedential), the Board found that the petitioner's evidence fell short of showing the full extent of the claim limitation. Specifically, the petitioner cross-referenced its argument to a limitation that showed only that a coupler between two movable members "movably connects the first and second movable members so that they may move into open and closed positions in the same manner" and did not show the limitation requiring "that the second movable member be 'movably connected to an opposed end of the coupler.'" *Id.* at 768. Under those

circumstances, the Court found the Board did not abuse its discretion in finding that the petitioner had failed to show that the prior art disclosed the challenged limitations. *Id.*

Here, in contrast, the Board reached a different outcome on an entirely different set of facts. As the Board found, the charts addressing the mobile device interface limitations expressly referred to limitation 1.6 for support. Limitation 1.6 was simply the method/functional version of the system implemented in limitations 5.8 and 7.8. And limitation 1.6 addressed both the function and system aspects of the claim. *See supra* Section V.A; *see also* Appx46. As the Board recognized, the Petition did not need to use the specific words "mobile device interface" for a reader to understand that the evidence was addressing both the method and system claims for the same invention in a single analysis. Appx46. Under these circumstances, there is substantial evidence to support the Board's findings of obviousness and its interpretation of the intended scope of the Petition. *See, e.g., Intellectual Ventures I*, 786 F. App'x at 1031–32 (finding arguments incorporated from other portions of petition provided "legally adequate notice of and support for" unpatentability ground); *see generally Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*, 949 F.3d 1366, 1375–76 (Fed. Cir. 2020) (affirming Board's finding of obviousness as supported by substantial evidence).

In any event, Voice Tech's claims of improper "new" reply arguments and evidence are a red herring. Unified did not cite to any new evidence or make any new arguments in reply with respect to claims 5 and 7. Instead, every substantive sentence of the portion of the reply addressing the mobile device interface limitations quotes or at least cites the Petition and supporting evidence. Appx590–593. And Mr. McNair's Reply Declaration does not address the "mobile device interface" limitations at all. *See, e.g.*, Appx2737.

Further, the Board did not rely on new reply arguments in the Final Written Decision. Instead, the Decision cites to the Petition and supporting evidence. Appx42–47. In the few instances where the Reply is referenced, the Decision recognizes where the argument was also made in the Petition. *See, e.g.*, Appx41 (citing Appx590–591 as citing Appx130–131, Appx134, Appx170, Appx174). And the Board further expressly disclaimed reliance on any Reply arguments. Appx59.

Even if the Reply had varied from the Petition, which it did not, a petitioner is permitted to raise arguments and evidence in reply necessary to respond to arguments in a patent owner's response, so long as those arguments and evidence do not alter the grounds for unpatentability asserted in the petition. *See Provisur Techs., Inc. v. Weber, Inc.*, 50 F.4th 117, 122 (Fed. Cir. 2022); *Infineum USA L.P. v. Chevron Oronite Co. LLC*, No. 2020-1333, 2022 WL 3147683, at *5 (Fed. Cir. Aug. 8, 2022)

(non-precedential). In this regard, the Court's reasoning in *Intellectual Ventures* is instructive. *Intellectual Ventures I*, 786 F. App'x at 1031–32. In that case, like Voice Tech here, the patent owner challenged whether the petition had adequately addressed certain claim limitations. After finding that the Board acted within its discretion in finding the Petition adequate, the Court considered the patent owner's argument that the reply raised new arguments in an attempt to expand the grounds originally asserted in the petition. *See id.* The patent owner's arguments were nearly identical to the arguments Voice Tech makes here. In that case, the Court rejected the patent owner's arguments, and reasoned as follows:

> It is not clear that EMC's argument about the Board's reliance on reply material is intended to stand independently of its contention about the inadequacy of the petition, but we see no reversible error in this respect if it is. The Board could fairly conclude that the arguments in EMC's reply were responsive to arguments IV made in its patent owner's response. They helped explain why the argument in EMC's petition was correct—namely, why disclosure of the "representing" limitation would teach or suggest the "allocate" limitation. *See Wasica Finance GmbH v. Continental Automotive Systems, Inc.*, 853 F.3d 1272, 1286 (Fed. Cir. 2017). EMC did not abandon its previous theory of prima facie obviousness in favor of a new one, nor did it advance a new theory of invalidity using entirely different references. *See id.* at 1286–87; *Intelligent Bio-Systems*, 821 F.3d at 1369–70.

*Id.* at 1032.

The question boils down to whether Voice Tech was given notice and a fair opportunity to respond to the asserted grounds. *See Belden Inc. v. Berk-Tek LLC*, 805

F.3d 1064, 1080 (Fed. Cir. 2015) (recognizing due process requires "notice of and a fair opportunity to meet the grounds of rejection"); *see also* Administrative Procedure Act, 5 U.S.C. §§ 554(b)(3), 554(c), 556(d) (requiring notice and opportunity to be heard so as to afford "a full and true disclosure of the facts"). Here, the Petition articulated the grounds supporting unpatentability with particularity. Nonetheless, if Voice Tech suffered any confusion about Unified's obviousness arguments as to the mobile device interface limitations, it had more than ample opportunity to respond.

Indeed, Voice Tech first raised its concerns in the Patent Owner's Preliminary Response. Appx215–218. And the Board found in the Institution Decision that the Petition adequately disclosed the grounds for unpatentability of the mobile device interface limitations. Appx280. That left Voice Tech with more than adequate opportunities to address the merits of Unified's arguments. Specifically, Voice Tech could have presented countervailing evidence regarding whether a POSITA "would have understood that an operating system has 'built-in services' . . . or [whether] 'built-in services' meet[s] our construction of a mobile device interface." *See* Appx44. It could have addressed the merits in the Patent Owner Response. It could have deposed Unified's experts on these topics and submitted any relevant

testimony as late as the sur-reply. But, as the Board noted, it did none of these things. Appx46.

"The Board must make judgments about whether a Petition identified the specific evidence relied on in a Reply and when a Reply contention crosses the line from the responsive to the new." *Ariosa Diagnostics v. Verinata Health, Inc.*, 805 F.3d 1359, 1368 (Fed. Cir. 2015). The Board was well within its discretion to determine that there was no line-crossing in this case.

## VI. To the extent the Court does not affirm obviousness over Wong and Beauregard, the Court should remand for consideration of Unified's separate obviousness ground.

To the extent the Court does not affirm the Board's obviousness analysis based on Wong and Beauregard (Ground 1 of Unified's Petition), the Court should remand for consideration of the separate ground raised in Unified's Petition (Ground 2, based on Ben-Efraim and Balakrishnan), which the Board had no occasion to address. *See SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1353 (2018); *AC Techs. S.A. v. Amazon.com, Inc.*, 912 F.3d 1358, 1364–65 (Fed. Cir. 2019) ("[W]e have held, if the Board institutes an IPR, it must similarly address all grounds of unpatentability raised by the petitioner.").

## CONCLUSION

For the reasons above, Unified respectfully requests affirmance of the Board's determination that claims 1 through 8 of the '679 patent are unpatentable because they would have been obvious to one of ordinary skill in the art.

Alternatively, to the extent the Court does not affirm the Board's obviousness analysis based on Wong and Beauregard, the Court should remand for consideration of the separate ground raised in Unified's Petition (based on Ben-Efraim and Balakrishnan), which the Board did not address.

Unified further requests such additional relief to which it may be entitled.

Respectfully Submitted,

**HAYNES AND BOONE, LLP**

*/s/ Debra J. McComas*
Debra J. McComas
David L. McCombs
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Phone: (214) 651-5375
*Debbie.McComas@haynesboone.com*
*David.McCombs@haynesboone.com*

Raghav Bajaj
600 Congress Avenue
Suite 1300
Austin, Texas 78701
Phone: (512) 867-8520
*Raghav.Bajaj@haynesboone.com*

Angela M. Oliver
800 17th Street NW, Suite 500
Washington, D.C. 20006
Phone: (202) 654-4552
*Angela.Oliver@haynesboone.com*

**UNIFIED PATENTS, LLC**
Roshan Mansinghani
Jordan Rossen
4445 Willard Ave., Ste. 600
Chevy Chase, MD 20815
Phone: (214) 945-0200
*Roshan@unifiedpatents.com*
*Jordan@unifiedpatents.com*

**Attorneys for Appellee, Unified Patents, LLC**

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of FED. CIR. R. 32(b)(1) because:

■ this brief contains **13,984** words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f) and FED. CIR. R. 32(b)(2).

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

■ this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Equity font.

*/s/ Debra J. McComas*
Debra J. McComas