# United States Court of Appeals for the Federal Circuit

---

**VOICE TECH CORP.,**
*Appellant*

**v.**

**UNIFIED PATENTS, LLC,**
*Appellee*

---

2022-2163

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2020-01018.

---

Decided: August 1, 2024

---

ERIC MICHAEL ADAMS, Tumey LLP, Houston, TX, argued for appellant.

ADAM LLOYD ERICKSON, Haynes and Boone, LLP, Washington, DC, argued for appellee. Also represented by ANGELA M. OLIVER; DEBRA JANECE MCCOMAS, DAVID L. MCCOMBS, Dallas, TX; ROSHAN MANSINGHANI, JORDAN MICHAEL ROSSEN, Unified Patents, LLC, Chevy Chase, MD.

---

Before LOURIE, CHEN, and CUNNINGHAM, *Circuit Judges*.

CHEN, *Circuit Judge*.

Unified Patents, LLC (Unified) petitioned the Patent Trial and Appeal Board (Board) for *inter partes* review (IPR) of claims 1–8 of U.S. Patent No. 10,491,679 ('679 patent), owned by Voice Tech Corporation (Voice Tech). The Board determined all challenged claims to be unpatentable under 35 U.S.C. § 103. Voice Tech appeals. We *affirm*.

BACKGROUND

The '679 patent relates to the use of voice commands at a mobile device to remotely access and control a computer. '679 patent col. 1 ll. 30–34. The patent asserts that, although such functionality was known in the art, the prior-art systems were application-specific, meaning they allowed a person to use a mobile device to remotely access and control only a *specific* application at a computer. *Id.* col. 1 ll. 15–21. The prior-art systems "require[d] the person to have multiple mobile devices and/or systems to remotely access and control the *different* applications at a computer." *Id.* col. 1 ll. 22–24 (emphasis added). The '679 patent purports to improve upon the prior art by enabling a single mobile device to remotely access and control multiple native applications and operating system functions at the computer. *Id.* col. 4 ll. 45–49.

Figure 1 (reproduced below) diagrams an embodiment of the disclosed system. "Mobile device 102 is coupled to general purpose computer 104 via communications medium 114." *Id.* col. 2 ll. 62–63. General purpose computer 104 includes mobile device interface 106 to receive voice or data information from mobile device 102, and audio command interface 108 to detect audio commands in the voice or data information. *Id.* col. 2 ll. 40–42, col. 3 ll. 13–14, 44–48. According to the '679 patent, the disclosed system "allows mobile device 102 to switch between native applications that are configured and operating system functions and native applications that are not configured for interaction with mobile device 102." *Id.* col. 4 ll. 59–63.




’679 patent FIG. 1.

Claims 1–4 are method claims, and claims 5–8 are corresponding system claims. Claims 1 and 5 are representative. For ease of reference, we adopt the claim limitation labeling that the parties employ. Claim 1 recites:

> [1.0] A method of accessing and controlling a computer from a mobile device, comprising:
>
> [1.1] receiving audio data from the mobile device, at the computer, at an audio command interface;
>
> [1.2] the audio command interface decodes the audio data into a command;
>
> [1.3] the audio command interface selects, from at least one operating system and at least one application, one operating system or one application, wherein the audio command interface decides is the appropriate operating system or application to execute at least one process in response to the command;
>
> [1.4] executing with the selected operating system or application the at least one process in response to the command;
>
> [1.5] generating output data in response to the selected operating system or application executing the at least one process; and

> [1.6] *transmitting the output data to the mobile [de]vice.*

*Id.* at claim 1 (emphasis added). Claim 5 recites:

> [5.0] A system for accessing and controlling a computer from a mobile device, comprising:
>
> [5.1] a computer;
>
> [5.2] a communications medium that couples the mobile device to the computer; and
>
> [5.3] an audio command interface, at the computer, the audio command interface:
>
> receives audio data from the mobile device;
>
> [5.4] decodes the audio data into a command;
>
> [5.5] selects, from at least one operating system and at least one application, one operating system or one application, wherein the audio command interface decides is the appropriate operating system or application to execute at least one process in response to the command;
>
> [5.6] executes with the selected operating system or application the at least one process at the computer in response to the command; and
>
> [5.7] generates output data in response to the selected operating system or application executing the at least one process;
>
> [5.8] *wherein a mobile device interface at the computer transmits the output data to the mobile device.*

*Id.* at claim 5 (emphasis added).

Unified's IPR petition contended that claims 1–8 are unpatentable as obvious over (1) U.S. Patent App. Pub. No. 2006/0235700 (Wong) and U.S. Patent No. 6,438,545

(Beauregard); and (2) U.S. Patent No. 7,203,721 (Ben-Efraim) and U.S. Patent No. 6,233,559 (Balakrishnan). The Board instituted review and issued a Final Written Decision finding all claims unpatentable under 35 U.S.C. § 103(a) over Wong and Beauregard. Because this ruling was dispositive of Unified's patentability challenge, the Board declined to address the other proposed ground. Voice Tech appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

### I

Voice Tech first argues that Unified's petition failed to identify any disclosure in Wong that teaches the "mobile device interface" recited in claims 5 and 7, and that failure should have precluded the Board from finding such a disclosure. Like the Board, we disagree with Voice Tech's reading of the petition.

Unified's petition stated that because "[c]laim 5 is substantively similar to claims 1 and 2," claim 5's "limitations are obvious for the same reasons as the corresponding limitations in claims 1 and 2." J.A. 130. Unified presented a chart listing limitation [5.8] as "cross-reference[d]" to limitation [1.6]. *Id.* at 131–32. In the same chart, Unified incorrectly indicated that limitation [5.8] recites "transmitting the output data to the mobile device," which is the text of limitation [1.6], instead of "wherein a *mobile device interface* at the computer transmits the output data to the mobile device." *Id.* at 132; '679 patent at claim 5 (emphasis added). Similarly, for claim 7, Unified cross-referenced limitation [7.8]—which is identical to limitation [5.8]—with limitation [1.6], and incorrectly indicated that limitation [7.8] recites the text of limitation [1.6]. *Id.* at 135.

In its Patent Owner's Preliminary Response, Voice Tech argued that the Board should deny institution

because Unified failed to mention the claimed "mobile device interface" in its petition, as Unified's discussion of limitations [5.8] and [7.8] omitted the term. The Board disagreed, reasoning in its Institution Decision that "[a]lthough Petitioner quotes only the function performed by the mobile device interface limitation, Petitioner maps its analysis of [the 5.8 and 7.8] limitation[s] to its claim 1 analysis." J.A. 281. Relying on Unified's analysis of the prior art's disclosures for claim limitation [1.6], particularly Unified's discussion of Wong's "PC 210" and Unified's expert testimony relating to "built-in services of [Wong's] computer operating system," the Board found Unified demonstrated a reasonable likelihood of showing that the prior-art combination of Wong and Beauregard teaches the claimed "mobile device interface." *Id.* at 281–82.

The Board reaffirmed its reading of the petition in its Final Written Decision, pointing out that "[a]lthough Petitioner's cross-referencing tables misquote the 'mobile device interface' limitation by reciting the function performed and omitting the structure that performs that function, Petitioner's analysis refers back to its claim 1 analysis of a limitation that performs the same 'transmitting' function." J.A. 42. Importantly, "Petitioner's claim 1 analysis demonstrates not only how the combination of Wong and Beauregard performs the 'transmitting' function, but identifies the structure that performs the function"—i.e., Wong's PC 210 and its built-in services. *Id.* at 42–43 (citations omitted). The Board thus found that Wong teaches the "mobile device interface" limitation of claims 5 and 7 and concluded that claims 5 and 7 are unpatentable over Wong and Beauregard.

On appeal, Voice Tech argues that the Board erred by creating obviousness arguments for the "mobile device interface" limitation on Unified's behalf. In Voice Tech's view, because the petition's analysis for limitation [1.6] does not expressly mention a "mobile device interface," "there is no evidence, much less substantial evidence, to

support a finding that Unified met its burden to prove that the combination of Wong and Beauregard teaches the [mobile device interface] in claims 5 and 7." Appellant's Opening Br. 20.

We find Voice Tech's argument unpersuasive. We have explained that "the Board is not permitted to entertain shifting arguments but must, instead, reject any entirely new theory of *prima facie* obviousness absent from the petition, if the petitioner attempts to inject such a theory into the proceeding post-petition." *Corephotonics, Ltd. v. Apple Inc.*, 84 F.4th 990, 1002 (Fed. Cir. 2023) (cleaned up). But the Board in this case did not consider or rely on a new theory absent from the petition. The petition identified, via cross-reference, that its prior art analysis on limitation [1.6] equally applied to limitations [5.8] and [7.8]. That analysis included discussion of Wong's PC 210 and the computer's built-in services. The Board mapped the "mobile device interface" limitations to Wong's PC 210 and its built-in services because the petition itself—by referring to the analysis for limitation [1.6] that specifically discussed Wong's PC 210 and its built-in services—raised this theory. The Board thus properly adhered to the petition's theory for how Wong teaches limitations [5.8] and [7.8], and substantial evidence supports its finding that Wong teaches a "mobile device interface."

II

Next, Voice Tech argues that the Board misinterpreted the claim terms "audio command interface" and "mobile device interface." The Board construed "audio command interface" to have its plain and ordinary meaning, and construed "mobile device interface" "to include hardware, software, or a combination thereof that enables communication between a computer and a mobile device." J.A. 15–16 (emphasis omitted).

Voice Tech argues that "audio command interface" means "a functional component of a computer, which may

be implemented in hardware, software, or a suitable combination of hardware and software, that enables a mobile device to access and control one or more operating systems and/or one or more applications at the computer without requiring voice command interoperability between the mobile device and each separate operating system or application." Appellant's Opening Br. 31. Voice Tech also argues that "mobile device interface" means "a functional component of a computer, which may be implemented in hardware, software, or a suitable combination of hardware and software, that enables the computer to communicate with a mobile device through an appropriate communications medium." *Id.* at 35. Voice Tech timely raised these proposed constructions in its Patent Owner Response, but the Board did not adopt them in its Final Written Decision. J.A. 349, 353.

Unified argues Voice Tech forfeited these claim construction arguments because they were not included with the arguments Voice Tech made in its request for rehearing before the Board. Unified further argues that neither of Voice Tech's proposed constructions would change the outcome of the patentability analysis. We address each of Unified's arguments in turn.

A

"A party dissatisfied with a [Board] decision may file a single request for rehearing" and the "request must specifically identify all matters the party believes the Board misapprehended or overlooked." 37 C.F.R. § 42.71(d). Unified argues that, under Section 42.71(d), Voice Tech has forfeited its claim construction arguments on appeal because Voice Tech filed a request for rehearing to the Board, but did not repeat in that request its previously raised claim construction arguments for "audio command interface" and "mobile device interface" that the Board had rejected in its Final Written Decision. We disagree with Unified's reading of the regulation.

As an initial matter, we note that nothing in the statutes or regulations requires a party to an IPR to file a request for rehearing to preserve a right to appeal to this court. By statute, a party's appeal right is tied to the Board's issuance of a "final written decision." 35 U.S.C. §§ 141(c), 319. The regulation likewise does not require a party to seek further agency review of an issue in order to preserve it for this court's review. Indeed, the regulation provides that filing a rehearing request is optional. 37 C.F.R. § 42.71(d) ("A party dissatisfied with a decision *may* file a single request for rehearing without prior authorization from the Board." (emphasis added)).

The regulatory requirement that a rehearing request "identify all matters the party believes the Board misapprehended or overlooked," *id.*, simply requires the party to identify the issues it wishes to present for rehearing by the agency after the agency has rendered a final decision. Nothing in the regulation appears to contemplate that the Board would expect requests for rehearing, if filed, to regurgitate all arguments the Board had already considered and rejected, simply to preserve them for appeal. The language in the regulation specifying that a party identify only matters it believed the Board "misapprehended or overlooked" is narrower in scope than the set of all matters in a Board's final decision that a party may disagree with. In addition, given the optional nature of rehearing requests, it would make little sense to find all issues preserved for appeal if a party declined to request rehearing, but to find certain issues forfeited if the party exercised its option to request rehearing on the subset of issues it believed the Board to have misapprehended or overlooked—which may not necessarily encompass all issues that would constitute error before this court. We thus hold that a party's choice to not re-raise an argument in the party's request for rehearing to the Board does not, in and of itself, forfeit the argument for review by this court.

We have long held that a party forfeits an argument that it fails to present to the Board because that failure deprives this court of the benefit of the Board's informed judgment. *In re Nuvasive, Inc.*, 842 F.3d 1376, 1380 (Fed. Cir. 2016) (citing *In re Watts*, 354 F.3d 1362, 1367–68 (Fed. Cir. 2004)). Here, Voice Tech presented its claim construction arguments to the Board in its Patent Owner Response, Unified responded to the arguments, and the Board expressly declined to adopt Voice Tech's proposed constructions. The arguments on appeal were thus presented to and fully considered by the Board in the underlying proceedings. This is true even though Voice Tech did not include those arguments in its rehearing request to the Board. We therefore conclude that Voice Tech did not forfeit its claim construction arguments on appeal.

In support of its forfeiture argument, Unified relies on this court's non-precedential decision in *Polycom, Inc. v. Fullview, Inc.*, 767 F. App'x 970 (Fed. Cir. 2019). *Polycom* is not binding, and moreover is distinguishable due to its unique procedural posture. *Polycom* involved an appeal of an *inter partes* reexamination with a convoluted procedural history before the Board and Examiner. After the Examiner rejected certain patent claims during reexamination, the Board upheld the unpatentability finding, but based on a new ground of rejection, and did not address the Examiner's ground. The Board allowed the patent owner to reopen prosecution, and the patent owner overcame the new ground of rejection before the Examiner. On the reexamination requester's appeal, the Board affirmed the Examiner. The requester did not argue to the Board during that appeal that the Board should have considered the Examiner's original ground of rejection. The requester then sought rehearing, but again failed to tell the Board that it should consider the Examiner's original ground of rejection. Instead, the requester waited to raise that issue with this court in the first instance. The Board thus never ruled on the issue that the requester sought to raise in this court.

The *Polycom* court found that the reexamination requester had forfeited[1] its argument relating to the Examiner's original ground of rejection by failing to raise it in the request for rehearing to the Board. *Id.* at 980. As described above, the Board's first decision on appeal did not address the Examiner's original ground of rejection, instead concluding that the claims were unpatentable over a new ground. For the second Board appeal, this time by the reexamination requester, the Board again never ruled on the issue, but that is because the requester neglected twice to ask it to do so, in either its appeal briefing or request for rehearing. Because "this court should not be put in the position of reviewing an alleged error in the Board's reasoning that the Board itself was not given a chance to address when it considered [the requester's] other arguments on rehearing," we found that the requester forfeited its arguments regarding the Examiner's original ground of rejection. *Id.*

The instant appeal is not analogous to *Polycom*. Here, Voice Tech proposed its constructions of "audio command interface" and "mobile device interface" to the Board in its Patent Owner Response; Unified addressed the constructions of these terms in the Petitioner's Reply; and the Board affirmatively ruled on the constructions in the Final Written Decision. *Polycom* is therefore inapposite, and we reject Unified's forfeiture theory.

---

[1] The *Polycom* court found waiver, but for consistency we use forfeiture here. *See In re Google Tech. Holdings LLC*, 980 F.3d 858, 862 (Fed. Cir. 2020) ("By and large, in reviewing this court's precedent, it is evident that the court mainly uses the term 'waiver' when applying the doctrine of 'forfeiture.'").

B

We next address Unified's argument that neither of Voice Tech's proposed constructions would change the outcome of the patentability analysis, given the prior art findings the Board made. Unified cites to the Board's findings that all computer components may be implemented in hardware, software, or a suitable combination; that the prior art discloses an "interface"; that the prior art discloses receiving information from a mobile device; and that the prior art discloses accessing and controlling operating systems or applications without requiring voice command interoperability. Appellee's Response Br. 21–22 (citing J.A. 14, 27–28). Thus, in Unified's view, despite ultimately rejecting Voice Tech's proposed construction, the Board nonetheless made findings that the prior art discloses the claimed "audio command interface" that corresponds to Voice Tech's proposed construction.

Voice Tech's reply does little to dispute this argument. Voice Tech argues that its "proposed definition of [audio command interface] differentiates it from the prior art because the [audio command interface] does not require configuration or interoperability," while in contrast "Wong requires the user to preconfigure a database" and "Beauregard does the same thing." Appellant's Reply Br. 23. But Voice Tech does not elaborate further on this argument and also fails to acknowledge or address the Board's contrary finding that the prior-art combination teaches "accessing and controlling one or more operating systems or applications without requiring voice command interoperability." J.A. 28.

Voice Tech's attempt to distinguish the prior art under its proposed construction of "mobile device interface" is similarly conclusory and inadequate. Voice Tech argues that the "Board's decision not to clearly construe 'mobile device interface' was in error" because "the Board did rely on [the Board's own partial] construction of [mobile device

interface] when it equated [mobile device interface] with 'built-in services.'" Appellant's Opening Br. 38. But Voice Tech stops short of explaining why its proposed construction would change the Board's obviousness findings, instead asserting only that "[t]his term must be defined in order to properly evaluate the obviousness challenges to claims 5 and 7." *Id.*

We need only construe claim terms that are in controversy, and only to the extent necessary to resolve the controversy. *Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*, 868 F.3d 1013, 1017 (Fed. Cir. 2017). Further, we need not construe claim limitations "where the construction is not 'material to the [obviousness] dispute.'" *Id.* (alteration in original) (quoting *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999)); *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1304 (Fed. Cir. 2009) (declining to consider a party's claim construction arguments after the party "failed to clearly explain what result would occur if this court adopted [the party's] proposed claim constructions" and "gave this court little guidance and cited no record support regarding why a modified claim construction would affect the infringement judgment"); *Comcast IP Holdings I LLC v. Sprint Commc'ns Co., L.P.*, 850 F.3d 1302, 1312 (Fed. Cir. 2017) ("[Appellant] fails to identify any prejudice associated with the district court's claim construction as it never explains in its opening brief how its purportedly correct and narrower claim construction would have affected the infringement verdict."); *see also In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004) ("We have previously made clear that the harmless error rule applies to appeals from the Board just as it does in cases originating from district courts. Thus, to prevail the appellant must not only show the existence of error, but also show that the error was in fact harmful because it affected the decision below." (citations omitted)).

Because Voice Tech has not shown any prejudice resulting from the Board's constructions of "audio command

interface" or "mobile device interface," we decline to consider Voice Tech's claim construction arguments.

III

We next address Voice Tech's challenges to the Board's obviousness findings. We review the Board's ultimate obviousness determinations de novo and its underlying factual findings for substantial evidence. *Novartis AG v. Torrent Pharms. Ltd.*, 853 F.3d 1316, 1327 (Fed. Cir. 2017). "Motivation to combine is one of those underlying factual issues." *Id.* (citing *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000)). "What a reference teaches and the differences between the claimed invention and the prior art" are also questions of fact. *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1280 (Fed. Cir. 2015).

Voice Tech argues that the Board erred in finding that the Wong-Beauregard combination teaches certain claim limitations, referred to below as the "receiving" limitation, the "decodes" limitation, and the "deciding/selecting" limitation.[2] Voice Tech separately argues that Unified's obviousness analysis was based on hindsight bias. We address each argument in turn.

First, Voice Tech argues that the prior art does not disclose "receiving audio data from the mobile device, at the computer, at an audio command interface" (i.e., the "receiving" limitation), as required by claims 1, 3, 5, and 7. Voice Tech argues that the prior-art combination does not disclose the "receiving" limitation because Wong does not disclose an "audio command interface" that performs the "deciding and selecting actions required of the [audio command interface]" in *other* claim limitations. Appellant's Opening Br. 41. This argument appears to rely on an

---

[2] The language of these limitations varies slightly among the claims. No party contends that these differences are material.

implicit claim construction of "audio command interface," raised for the first time on appeal, that would require the interface to perform the "deciding" and "selecting" actions as part of the "receiving" limitation.

Looking to claim 1 as an example, Voice Tech's position would incorporate the steps recited in claim limitation [1.3] (deciding and selecting) directly into claim limitation [1.1] (receiving), thereby leaving claim limitation [1.3] no work to do. Such a construction would improperly impute other limitations into the claim term, rendering those other limitations superfluous. *See SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns AB*, 820 F.3d 419, 429 (Fed. Cir. 2016) ("[I]nterpretations that render some portion of the claim language superfluous are disfavored." (internal quotation marks and citation omitted)); *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so."). Accordingly, we reject Voice Tech's argument.

Voice Tech also argues that the combination of Wong and Beauregard fails to disclose the "audio command interface" recited in the "receiving" limitation because a skilled artisan would not have been motivated to combine Wong and Beauregard. According to Voice Tech, a skilled artisan "would not have looked to Beauregard's teachings related to MIKE 330 if the [skilled artisan] was considering modifying Wong's speech engine for receiving audio data" because Beauregard's "component MIKE 330 has nothing to teach regarding receiving audio data; Beauregard's MIKE 330 receives translated text" from third-party voice-to-text software. Appellant's Opening Br. 42. But the Board reasonably credited Unified's argument that modifying Wong in view of Beauregard's teachings involved simply applying known techniques to a similar device and relied on expert testimony to conclude that a skilled artisan would have been motivated to combine the teachings of the prior-art references. J.A. 23–26. Substantial evidence supports the

Board's findings that the combination of Wong and Beauregard teaches the "receiving" limitation, including the "audio command interface."

Second, Voice Tech argues that the prior art does not disclose that "the audio command interface decodes the audio data into a command" (i.e., the "decodes" limitation), as required by claims 1, 3, 5, and 7. The Board found that "Wong's speech recognition engine 213 decodes received audio data into a command" because "Wong discloses [that] PC 210 receives voice commands from smart phone 202 and speech recognition engine 213 'parses the command[s]' in order to 'identify voice commands and keywords.'" J.A. 30 (second alteration in original) (quoting Wong ¶¶ 32, 37–39). The Board further found that "Beauregard discloses converting voice data to text, [] providing the text to MIKE 330's command interpreter 430," searching for matching action words, and providing a script associated with a matching action word. *Id.* (citing Beauregard col. 28 l. 65 – col. 29 l. 1, col. 28 ll. 56–69, col. 29 ll. 9–12).

According to Voice Tech, the Board erred because "Wong's speech engine is not an audio command interface" and because Wong's "'parsing' is simply speech-to-text translation." Appellant's Opening Br. 46. Voice Tech also argues that the Board erred because "Beauregard's matching function does not disclose or teach decoding." *Id.* at 49. As discussed above, however, the Board reasonably concluded that Wong's speech engine as modified by Beauregard discloses the claimed "audio command interface." Furthermore, Voice Tech does not explain why speech-to-text translation does not sufficiently disclose the "decodes" limitation. Voice Tech's arguments appear to rely on an implicit claim construction of "decodes" that would exclude "parsing," "speech-to-text translation," or "matching," but Voice Tech never sought construction of the claim term "decodes." We thus reject Voice Tech's arguments and find that the Board reasonably found that the combination of Wong and Beauregard teaches the "decodes" limitation.

Third, Voice Tech argues that the prior art does not disclose "the audio command interface selects, from at least one operating system and at least one application, one operating system or one application, wherein the audio command interface decides is the appropriate operating system or application to execute at least one process in response to the command" (i.e., the "deciding/selecting" limitation), as recited by claims 1 and 5. Voice Tech similarly argues that the prior art does not disclose the "deciding/selecting" limitation in claims 3 and 7, which recite "the audio command interface selects, from two or more applications, one application, wherein the audio command interface decides is the appropriate application to execute at least one process in response to the command."

The Board agreed with Unified that the combination of Wong and Beauregard teaches this limitation because "a person skilled in the art would have found it obvious to modify Wong's system, including speech recognition engine 213 and keyword database 225, 'to incorporate Beauregard's teachings related to logic capable of interpreting natural-language voice commands to select from a database (e.g., wordbase [340])' commands to control a variety of services, including commands for the operating system and multiple applications." J.A. 33 (quoting J.A. 112) (emphasis omitted). Voice Tech argues that the Board erred because "[t]here is nothing in Beauregard disclosing or teaching a *component* that decides the appropriate operating system or application to execute at least one process in response to the command and then selects, from at least one operating system and at least one application, one operating system or one application"; instead, the "user controls all of these activities by preconfiguring the system with specific instructions." Appellant's Opening Br. 54 (emphasis added). The Board considered and rejected this argument, crediting Unified's expert testimony explaining that "a person skilled in the art at the time of the invention would have known that computers 'decide' which

operations to perform based on preconfigured instructions." J.A. 34. Substantial evidence supports the Board's findings.

Finally, Voice Tech argues that Unified's obviousness theory—and hence the Board's obviousness theory—succumbed to hindsight bias by failing to address why a skilled artisan *at the time of invention*—June 4, 2007—would have been motivated to combine Wong and Beauregard. The Board considered and rejected this argument, finding that "Petitioner's analysis relies on and cites the declaration of [expert witness] Mr. McNair," J.A. 24, including statements from the declaration addressing obviousness "through the eyes of a person having ordinary skill in the art at the time of the invention," J.A. 1220 ¶ 12. Substantial evidence supports the Board's finding that a skilled artisan at the time of the invention would have been motivated to combine Wong and Beauregard.

Accordingly, we affirm the Board's obviousness findings as to all challenged claims.

## CONCLUSION

We find none of Voice Tech's remaining arguments persuasive. For the foregoing reasons, we affirm the Board's determinations of unpatentability as to all claims.

**AFFIRMED**